UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BROWARD DIVISION

CASE NO. **09-CV-61935-Zloch-Rosenbaum**

AMERISURE MUTUAL INSURANCE
COMPANY,

        Plaintiffs,

v.

DEANNE WEST, individually and as Personal
Representative of the ESTATE OF AARON
WEST, deceased, and as parent and natural
guardian of AARON WEST, JR. surviving
minor son, and AQUINAS WEST, surviving
minor daughter of the ESTATE OF AARON
WEST, Deceased, W. JACKSON & SONS
CONSTRUCTION COMPANY, a Florida
corporation, and GULF BUILDING
CORPORATION, a Florida corporation,

        Defendant.

_____/



FILED by _VT_ D.C.
ELECTRONIC

**Dec. 8, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Amerisure Mutual Insurance Company ("Amerisure"), sues Defendants,

DEANNE WEST, individually and as Personal Representative of the ESTATE OF AARON

WEST, deceased, and as parent and natural guardian of AARON WEST, JR. surviving minor

son, and AQUINAS WEST, surviving minor daughter of the ESTATE OF AARON WEST,

deceased, W. JACKSON & SONS CONSTRUCTION COMPANY, a Florida corporation, and

GULF BUILDING CORPORATION, a Florida corporation, for declaratory relief and alleges as

follows:

## PARTIES

1.      Amerisure is incorporated under the laws of Michigan, has its principal place of business in the State of Michigan and is licensed to transact business in the State of Florida.

2.      Upon information and belief, Defendant Deanne West has been or will be appointed as the Personal Representative of the Estate of Aaron West and is the surviving spouse of Aaron West.

3.      Upon information and belief, Defendant Deanne West , a natural person, is a citizen and domiciliary of the State of Florida, residing at 816 4th Avenue, Ft. Lauderdale, Florida, 33311.

4.      Upon information and belief, Defendant Deanne West is the parent, natural guardian and/or next friend of Aaron West, Jr., the surviving minor son of Aaron West.

5.      Upon information and belief, Defendant Deanne West is the parent, natural guardian and/or next friend of Aquinas West, the surviving minor daughter of Aaron West.

6.      Defendant W. Jackson & Sons Construction Company ("Jackson") is a Florida corporation authorized to and doing business in Broward County, Florida, with its principal place of business at 1888 NW 21st Street, Pompano Beach, Florida 33069.

7.      Defendant Gulf Building Corporation ("Gulf") is a Florida corporation authorized to and doing business in Broward County, Florida, with its principal place of business at 633 S. Federal Highway, 5th Floor, Fort Lauderdale, Florida 33301.

8.      Gulf was the general contractor of a construction job located at the 10800 block of Miramar Boulevard in Broward County, Florida ("Construction Site") on or about June 25, 2007.

9.      Jackson was a subcontractor hired by Gulf to perform work associated with the earth excavation and creation of a man made lake at the Construction Site.

2

## JURISDICTION AND VENUE

10.    This court has subject matter jurisdiction pursuant to 28 U.S.C.S. § 1332 because the parties are in complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.  Further, this action is based on 28 U.S.C.S. § 2201.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) for the reasons that Amerisure entered into a contract of insurance in this district and the underlying action was venued in this district.

## GENERAL ALLEGATIONS

12.    On June 25, 2007, Aaron West sustained fatal injuries when he purportedly was ordered to operate a back hoe by his employer at the Construction Site and the backhoe became unstable on a steep slope and fell into a man made lake.

13.    Thereafter, Deanne West, as personal representative of the Estate of Aaron West, for the benefit of Deanne West, surviving spouse, Aaron West, Jr., surviving minor son, Aquinas West, surviving minor daughter, and the Estate of Aaron West, filed suit against W. Jackson & Sons, a Florida corporation, and Gulf Building Corporation, a Florida corporation under a case captioned *Deanne West, as personal representative of the Estate of Aaron West, for the benefit of Deanne West, surviving spouse, Aaron West, Jr., surviving minor son, Aquinas West, surviving minor daughter, and the Estate of Aaron West, v. W. Jackson & Sons, a Florida corporation, and Gulf Building Corporation, a Florida corporation*, in Broward County, Florida under case number 09-35371 ("Underlying Action").  A copy of the Complaint is attached as Exhibit "A."

14.    Amerisure provided a commercial general liability policy to Gulf Building Corp for the policy period effective April 1, 2007 to April 1, 2008 with policy limits of 1,000,000 per

3

occurrence, under policy number 27002976 ("Insurance Policy"), a copy of which is attached as

Exhibit "B."

15.    The Amerisure Insurance Policy provides, in pertinent part:

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)    The "bodily injury" or "property damage" occurs during the policy period.

16.    The Amerisure policy also contains the following exclusions:

**III. EXCLUSIONS**

This insurance does not apply to:

d.    **Workers' Compensation and Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.    **Employer's Liability**
"Bodily injury" to:

(1)    An "employee" of the insured arising out of and in the course of:

(a)    Employment by the insured; or

(b)    Performing duties related to the conduct of The insured's business; or

(2)    The spouse, child parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

4

This exclusion applies:

> **(1)**    Whether the insured may be liable as an employer or in any other capacity; and

> **(2)**    To any obligation to share damages with our repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

17.    The Amerisure Policy also contains the following definitions:

**"Bodily injury"** is defined as:

Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**"Employee"** includes:

A "leased worker." "Employee" does not include a "temporary worker."

**"Leased worker"** means:

A person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**"Occurrence"** is defined in the policy as:

An accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**"Temporary worker"** means:

A person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18.    The Complaint in the Underlying Action alleges that:

**a.**    On June 25, 2007, Aaron West was an employee of Defendant Jackson.

**b.** On June 25, 2007, Gulf was the general contractor on the subject construction project.

**c.** On June 25, 2007, Jackson was hired, contracted or employed by Gulf to perform work on the construction project.

**d.** Defendant Gulf assumed and possessed a non-delegable duty to assure that all work pertaining to the excavation, land clearing, grading and lake excavation at the subject construction site were preformed in accordance with all state, federal, and applicable industry standards, in a safe manner, and that all such individuals engaged therein were properly trained, educated, experienced, certified and equipped.

**e.** Defendant Gulf breached its non-delegable duty.

**f.** As a result of Defendant Gulf's breach, Mr. West suffered fatal injuries.

19. Pursuant to the Complaint in the Underlying Action, Mr. West would be a statutory employee of Gulf.

## COUNT I - DECLARATORY RELIEF

20. Amerisure and the Defendants are in dispute as to Amerisure's rights, obligations and duties, if any, owed to Gulf pursuant to the stated terms and conditions of the Insurance Policy and is in need of a judicial declaration regarding same.

21. Amerisure seeks the Court's intervention to make the following findings:

**a.** There is no coverage under the subject policy based on the "Workers Compensation and Other Laws" exclusion;

**b.** There is no coverage under the subject policy based on the "Employer's Liability" exclusion;

**c.** Amerisure has no obligation to defend Gulf in the Underlying Action;

6

**d.**   Amerisure has no obligation to indemnify Gulf in the Underlying Action;

22.   Amerisure has complied with all conditions precedent to the filing of this lawsuit.

WHEREFORE, Amerisure prays this Court declare as follows:

**e.**   That this Court has jurisdiction over this matter;

**f.**   That this Court has jurisdiction over the parties in this matter;

**g.**   That Amerisure did not owe a duty to defend Gulf under the terms, conditions and exclusions of the Insurance Policy;

**h.**   That Amerisure does not owe a duty to indemnify Gulf under the terms, conditions and exclusions of the Insurance Policy; and

**i.**   Such other relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Amerisure demands a trial by Jury on all issues so triable as a matter of law.

By:_____

JOHN BOND ATKINSON
Florida Bar No. 0290270
E-mail:  jatkinson@atkinsonbrownell.com
KRYSTINA N. JIRON
Florida Bar No.  915491
E-mail: knjiron@atkinsonbrownell.com
Atkinson & Brownell, P.A.
One Biscayne Tower, Suite 3750
2 South Biscayne Blvd.
Miami, Florida  33131
Tel.:  305-376-8840
Fax.:  305-376-8841
*Counsel for Plaintiff*

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR BROWARD
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER:

DEANNE WEST, as Personal
Representative of the ESTATE OF
AARON WEST, Deceased,
for the benefit of DEANNE WEST,
surviving spouse, AARON WEST, JR.
surviving minor son, AQUINAS WEST,
surviving minor daughter and the ESTATE
OF AARON WEST, Deceased,

    Plaintiffs,

vs.

W. JACKSON & SONS CONSTRUCTION
COMPANY, a Florida corporation,
and GULF BUILDING CORPORATION,
a Florida corporation

    Defendant.

_____/



09 0 35 37 1

**21**

A TRUE COPY

JUN 25 2009

CLERK OF CIRCUIT COURT
BROWARD COUNTY, FLA.

## **COMPLAINT**

    Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE of AARON

WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON WEST, JR.,

surviving minor son, AQUINAS WEST, surviving minor daughter, and the ESTATE AARON

WEST, deceased, sues Defendants, W. JACKSON & SONS CONSTRUCTION COMPANY, a

Florida corporation, and GULF BUILDING CORPORATION, a Florida corporation, and alleges

as follows:

    1.    This is an action for damages that exceed the minimum jurisdictional limits of

this Court.

- 1 -



**EXHIBIT**

A

2.      At all times material hereto, Plaintiff DEANNE WEST has, or will be, duly appointed Personal Representative of the ESTATE of AARON WEST, deceased (hereinafter referred to as the "ESTATE,") and is the proper party to bring this action.

3.      At all times material hereto, Plaintiff DEANNE WEST, was and is the surviving spouse of AARON WEST, Deceased.

4.      At all times material hereto, Plaintiff AARON WEST, JR., was and is the surviving minor son of AARON WEST, Deceased.

5.      At all times material hereto, Plaintiff AQUINAS WEST, was and is the surviving minor daughter of AARON WEST, Deceased.

6.      Defendant, W. JACKSON & SONS CONSTRUCTION COMPANY (hereinafter referred to as "JACKSON,") is a Florida corporation authorized to and doing business in Broward County, Florida with a principal place of business at 1888 NW 21st Street, Pompano Beach, FL 33069.   Defendant JACKSON held itself out as a qualified and competent provider of construction services including land excavation, lake excavation, site clearing and grading.

7.      Defendant, GULF BUILDING CORPORATION (hereinafter referred to as "GULF,") is a Florida corporation authorized to and doing business in Broward County, Florida with a principal place of business at 633 S. Federal Highway, 5th Floor, Fort Lauderdale, FL,. 33301. Defendant GULF held itself out as a qualified and experienced General Contractor using only the most qualified sub-contractors to complete any type of construction project.

8.      On or about June 25, 2007, Defendant, GULF, was the general contractor of a construction job located at the 10800 block of Miramar Blvd, in Broward County, Florida. In connection with the construction work at this location, the Defendant, GULF, was required to move and excavate earth to create a man made lake.

– 2 –

9.    On or about June 25, 2007, Defendant, JACKSON, was hired, contracted or employed by Defendant, GULF, to perform the work associated with the earth excavation and creation of a man made lake at the construction site located in the 10800 block of Miramar Blvd, in Broward County, Florida.

10.    On or about June 25, 2007, Aaron West, deceased, was an employee of Defendant, JACKSON, and was ordered to operate a John Deere back hoe to move, excavate and dig earth in the creation of the man made lake at the construction site referenced above.

11.    The excavation work that was being performed at the construction site listed above and the use of the John Deere back hoe to accomplish that work is ultra-hazardous and inherently dangerous.

12.    On or about June 25, 2007 the back hoe that Aaron West, deceased, was ordered to operate by his employer became unstable on a steep slope or grade, tipped over and fell into the lake that was being created. As a result, Aaron West, deceased, drowned and the Estate and survivors have suffered damages as more fully set forth below.

### COUNT I – CLAIMS AGAINST JACKSON

13.    Plaintiff adopts and incorporates all of the allegations contained in Paragraph 1 through 12 and further alleges as follows:

14.    On or before June 25, 2007, Defendant JACKSON hired Aaron West, deceased, as a construction worker and not as a heavy machine operator.

15.    At no time prior to Aaron West, deceased, employment with Defendant JACKSON had he received any training in the operation of heavy construction equipment, including, but not limited to, the operation of a John Deere back hoe.

- 3 -

16. Defendant, JACKSON, knew, at the time that Aaron West, deceased, was hired that he did not possess the proper training or licensing to operate heavy construction equipment like the John Deere back hoe in question or perform earth excavation at/or near the edge of a man made lake.

17. At no time prior to Aaron West's, deceased, death was he trained or certified by Defendant JACKSON or anyone else in the ultra-hazardous and inherently dangerous activity of excavating land and/or operating heavy construction equipment like the John Deere back hoe in question.

18. On or about June 25, 2007, Defendant, JACKSON, through its employees and/or supervisors knew that the decedent, Aaron West, was unable to swim.

19. On or about June 25, 2007, Defendant, JACKSON, possessed, controlled and had the right to control the work being performed at the construction site identified above.

20. On or about June 25, 2007, Defendant, Jackson, through its employees and/or supervisors ordered the decedent, Aaron West, to operate the John Deere back hoe on an unsafe grade/slope near a body of deep water with full knowledge of the absence of his training, education, certification and basic understanding of the operation of the heavy machinery.

21. Defendant, JACKSON, knew or should have known that the lack of training, experience, licensing and certification of decedent Aaron West was virtually certain to result in his injury or death.

22. In addition to the aforementioned failures, Defendant, JACKSON, failed to:

    a)    prepare and maintain an adequate written safety program;

– 4 –

b)   perform a site hazard assessment at the location of the construction site before ordering the decedent to work in the unsafe conditions without proper training, and/or;

c)   conduct adequate and reasonable safety meetings.

23.   At the time that decedent Aaron West was ordered to perform the excavation work as set forth above the Defendant, JACKSON, had actual or constructive knowledge that the location the decedent would be operating the John Deere back hoe in was unsafe and unstable.

24.   On or before June 25, 2007, Defendant, JACKSON, intentionally or willfully withheld from the decedent, Aaron West, the fact that he should be trained, licensed or certified before undertaking to operate heavy machinery on soft sloping soil near a body of water.

25.   On June 25, 2007, Defendant, JACKSON, through its employees or supervisors intentionally or willfully withheld the fact that the location that the decedent was to perform the work using the John Deere back hoe was dangerous due to the sloping earth near a man made lake.

26.   Defendant JACKSON engaged in conduct that it knew, based on prior explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to its employee, Aaron West, because:

a)   decedent Aaron West had warned JACKSON of the unsafe soil conditions he was working in and JACKSON disregarded the possibility of any harm resulting from such conditions; and/or

– 5 –

b) JACKSON failed to address the hazards associated with excavating near a lake or the use of heavy equipment such as a back hoe near the water; and/or

c) JACKSON had direct knowledge of the dangerous condition and intentionally and willfully assigned decedent Aaron West to perform the work which led to his death.

27. As a result of the aforementioned intentional conduct of Defendant JACKSON, said Defendant received multiple citations from OSHA regarding its conduct which led to the death of Aaron West, including, but not limited to the following:

a) Citation 1, Item 1 (Type of Violation: **Serious**) which stated, "On or about 6/25/07 at 10800 Miramar Boulevard, Miramar, Florida, deficiencies in the site safety and health program were identified to include hazard prevention and control, worksite analysis and safety and health training," in direct violation of 29 CFR 1926.20(b)(1), which required a safety program to be initiated and/or maintained to provide compliance with the general safety and health provisions of the standard.

b) Citation 1, Item 2 (Type of Violation: **Serious**) which stated, "On or about 6/25/07 an employee was exposed to a drowning hazard while operating a John Deere 330LC hydraulic excavator on unstable soil at the edge of a lake," in direct violation of 29 CFR 1926.602(a)(3)(i), which states that it is a violation when an employer moves or causes to move construction equipment or vehicles upon access roadways or grades that are not constructed and maintained to accommodate safely the movement of the equipment and vehicles involved.

28. At all times material hereto, Defendant, JACKSON, intentionally or willfully

– 6 –

carried out the aforementioned hazardous work without requiring the appropriate license, permits, education or training.

29.    Defendant, JACKSON, intentionally acted as described above, in direct contravention of state and federal laws and regulations, with actual knowledge of the inherently dangerous and ultra-hazardous nature of the activity which it ordered decedent Aaron West to carry out, resulting in the virtual certainty of injury or death to decedent, Aaron West, as best proved by his demise.

30.    As a direct and proximate result of the foregoing, decedent, Aaron West drowned on June 25, 2007 and the Estate and Survivors have suffered the following damages:

a)    DEANNE WEST as surviving spouse has suffered the loss of the decedent's companionship and protection, and her mental pain and suffering in the past and future as a result of the decedent's injury and death.

b)    AARON WEST, JR., as surviving minor son, and AQUINAS WEST as surviving minor daughter have suffered the loss of parental companionship, instruction and guidance, and their mental pain and suffering as a result of the decedent's injury and death both in the past and future

c)    DEANNE WEST as surviving spouse, AARON WEST, JR., as surviving minor son, and AQUINAS WEST as surviving minor daughter have suffered the loss of the decedent's support and services;

d)    THE ESTATE OF AARON WEST has incurred funeral expenses;

e)    The ESTATE OF AARON WEST has incurred medical expenses incurred as a result of the decedent's death; and

f)    The Estate of AARON WEST has lost its net accumulations.

WHEREFORE, Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE of AARON WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON WEST, JR., surviving minor son, AQUINAS WEST, surviving minor daughter, and the ESTATE AARON WEST, deceased, sue the Defendant, W. JACKSON & SONS

– 7 –

CONSTRUCTION COMPANY, a Florida corporation, for compensatory damages together with interest and costs and any other and further relief this Court deems appropriate and demand trial by jury of all issues triable as of right by a jury.

### COUNT II – CLAIM AGAINST GULF – NON DELEGABLE DUTY

31.   Plaintiff adopts and incorporates all of the all allegations contained in Paragraphs 1 through 30 and further alleges as follows:

32.   As noted above, by contract as the general contractor of the job, as well as operation of law, Defendant, GULF, assumed and possessed a non-delegable duty to assure that all work pertaining to the excavation, land clearing, grading and lake excavation at the subject construction site were performed in accordance with all state, federal, and applicable industry standards, in a safe manner, and that all such individuals engaged therein were properly trained, educated, experienced, certified, and equipped.

33.   Defendant, GULF, breached its non-delegable duty in light of the fact that neither Defendant, JACKSON, nor decedent Aaron West were educated, trained, experienced, certified, and/or equipped to safely carry out the subject inherently dangerous and ultra-hazardous activity and work, in direct violation of state, federal, and applicable industry standards, rules, and regulations.

34.   As a result of Defendant, GULF's, breach of its non-delegable duties, decedent herein, Aaron West, fell to his death and drowned and The Estate and the Survivors have suffered those injuries and damages more specifically set forth in paragraph 30 above.

WHEREFORE, Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE of AARON WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON WEST, surviving minor son, AQUINAS WEST, surviving minor daughter, and the ESTATE AARON WEST, deceased, sue the Defendant, GULF BUILDING CORPORATION, a Florida

– 8 –

ultra-hazardous and inherently dangerous work that ultimately led to his death.

46.     As a result of the aforementioned acts and/or omissions of the Defendant,
GULF, Aaron West was killed and the Estate and Survivors herein have suffered those
damages more specifically set forth in paragraph 30 above.

WHEREFORE, Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE
of AARON WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON
WEST, JR., surviving minor son, AQUINAS WEST, surviving minor daughter, and the
ESTATE AARON WEST, deceased, sue the Defendant, GULF BUILDING CORPORATION,
a Florida corporation, for compensatory damages together with interest and costs and any
other and further relief this Court deems appropriate and demand trial by jury of all issues
triable as of right by a jury.

DATED: _6-25-09_

McCULLOUGH & LEBOFF, P.A.
Attorneys for Plaintiff
2901 Stirling Road #207
Ft. Lauderdale, Fl 33312
Tel (954) 989-3435 Broward .
Tel (305) 461-2500 Dade
Fax (954) 989-3432

By: _____
        Scott T. McCullough
        Florida Bar No. 0065500

– 11 –

Project Name: MNSN SPORTS COMPLEX    [Hereinafter called "Project"]

Project No.: 8704-2007

Project Location: 10801 MIRAMAR BOULEVARD, MIRAMAR, FLORIDA 33025

Owner: CITY OF MIRAMAR
2200 CIVIC CENTER PLACE
MIRAMAR, FLORIDA 33025
Phone: 954-602-3118
Fax: 954-602-3599    [Hereinafter called "Owner"]

Contractor: GULF/ARISTEO, A.IV
800 CORPORATE DRIVE
SUITE 400
FORT LAUDERDALE, FLORIDA 33334
Phone: 954-492-9181
Fax: 954-492-9182    [Hereinafter called "GULF/ARISTEO, A.IV"]

Architect: KIMLEY-HORN AND ASSOCIATES, INC.
600 NW 12th AVENUE
SUITE 109
FORT LAUDERDALE, FLORIDA 33309
Phone: 954-739-2233
Fax: 954-739-2247    [Hereinafter called "Architect"]

THIS AGREEMENT made and entered into this **17 day of February, 2007**, by and between GULF/ARISTEO, A.IV and:

Company: W. Jackson & Sons Construction Company    [Hereinafter called "Subcontractor"]
Street: 1885 N. W. 21st Street
City/State: Pompano Beach, Florida 33069
Phone: 954-972-3060
Fax: 954-960-1879

Subcontract Agreement No.: 8704-0007-0002-01

GULF/ARISTEO, A.IV and Subcontractor agree as follows:

**Article I Contract Sum and Payments**

1.1. **Contract Consideration.** From the general contract sum to be paid to GULF/ARISTEO, A.IV by the Owner, the sum to be paid to Subcontractor for its said Work included in the Agreement shall be Two Million, Four Thousand, Three Hundred and Five Dollars and Zero Cents ($2,004,305.00) (Hereinafter called the "Consideration")

In current United States funds, subject to additions or deductions as herein provided, which sum shall be understood to include all permits, fees, inspection costs and or taxes required by any division of the Federal, State, or local government. Subcontractor acknowledges that any payment obligation is expressly conditioned upon GULF/ARISTEO, A.IV receiving payment from the Owner for work performed by Subcontractor in respect to each and every obligation of Subcontractor arising hereunder.

1.1.1. **Taxes.** Subcontractor, for the Contract Consideration stated herein, hereby accepts and assumes exclusive liability for and shall insure, defend, indemnify and hold GULF/ARISTEO, A.IV harmless from and against the payment of all Municipal, State, County and Federal Taxes imposed by law, based upon payroll costs, material furnished, or services rendered, including but not limited to, FICA taxes, State County and Federal unemployment taxes, sales taxes, use taxes and personal property taxes levied or assessed against the Owner, or GULF/ARISTEO, A.IV, or Subcontractor arising out of or in any other manner relating to the furnishing of labor and/or services in connection with the Work and shall not exceed the Contract Consideration stated herein.

1.2. **Monthly Requisitions.** On or before the 20th of the month Subcontractor shall furnish directly to GULF/ARISTEO's field office an acceptable partial payment estimate for the work performed by Subcontractor prorated through the 25th of the month on the form provided by GULF/ARISTEO, A.IV a copy of which is attached hereto as Exhibit "D" ("Monthly Requisition Forms"). Monthly requisitions shall be accompanied by original partial release of lien from all of Subcontractor's sub-subcontractors and material men for work performed and service rendered. If the partial payment estimate is properly submitted and approved by GULF/ARISTEO, A.IV, GULF/ARISTEO, A.IV shall include the partial payment estimates of Subcontractor in its request to Owner for partial payments. Unless otherwise provided herein, GULF/ARISTEO, A.IV shall make partial payment to Subcontractor within ten (10) days following GULF/ARISTEO's receipt of payment from Owner for Work performed by Subcontractor, including



GULF/ARISTEO, A.IV
Subcontractor Agreement

1 of 35

changes in the Work, to the extent of Subcontractor's interest therein. Subcontractor shall in turn and to the same manner, make partial and final payments to its laborers, suppliers and subcontractors for work performed and materials furnished by it to the extent of their respective interest therein. Subcontractor shall earmark all payments made to its subcontractors and suppliers by identifying the Project referenced in this Agreement and include the Project referenced on the Application of its payments in any Contractor balance for the Project referenced in this Agreement.

**12.1.** The amount paid to Subcontractor shall not exceed the amount allowed and paid by owner on account of Subcontractor's Work, less all previous payments, less ten percent (10%) retainage, less all charges for services or materials withheld by GULF/ARISTEO, A/V and properly chargeable to Subcontractor, and less all sums properly withheld by GULF/ARISTEO, A/V as allowed by the terms of this Agreement.

**12.2.** Notwithstanding anything to the contrary herein or in any other Contract Document, Owner's actual payment to GULF/ARISTEO, A/V of funds representing the work of Subcontractor shall be an express condition precedent to any obligation of GULF/ARISTEO, A/V to pay Subcontractor. Subcontractor acknowledges and agrees that actual receipt of full payment from Owner shall be a condition precedent to the bringing of any action for payment against GULF/ARISTEO, A/V or its Surety. Subcontractor further agrees that the full performance of such payment from Owner shall not alter the binding action of the paragraph.

**12.3.** Subcontractor's failure to submit a proper and timely request for partial payment, together with additional documentation required herein and by the Contract Documents, will result in the request for partial payment being held over for submission during the succeeding payment period.

**12.4.** Subcontractor covenants that all sums paid by GULF/ARISTEO, A/V to it shall be, and hereby are, impressed with a trust in favor of laborers, subcontractors and materialmen furnishing labor and material to Subcontractor in connection with the Work, as well as in favor of any taxes, insurance premiums or governmental fees owed in connection with the Work. Subcontractor shall be in favor of any taxes, insurance premiums or governmental fees owed in connection with the Work, as well as in favor of any person whom have supplied labor or materials or services for the benefit of all such persons. Subcontractor shall, as often as requested from GULF/ARISTEO, A/V furnish an Affidavit showing the names and addresses of all persons who have provided labor, equipment, services or materials in connection with the Work, as well as the amounts due to each such person, and the amounts paid to each such person by Subcontractor. In addition, and as a further condition precedent to GULF/ARISTEO, A/V's payment obligation to Subcontractor herein, Subcontractor shall execute and deliver to GULF/ARISTEO, A/V with each request for partial payment all of the following:

A. A waiver and release and;

B. Subcontractor's proof, if required, of its continued adherence to all bonding, insurance, bonding, and indemnity requirements of this Agreement and;

C. Subcontractor's satisfaction or removal, by bonding or otherwise, of any lien or bond claim, or other claim against the Owner, GULF/ARISTEO, A/V or GULF/ARISTEO, A/V's surety, by persons claiming to have furnished labor, materials, equipment or services for the Project at the request of Subcontractor and;

D. Subcontractor's furnishing all documentation or information required by the Contract Documents in connection with any payment request and;

E. The absence of any material breach of the Agreement by Subcontractor and;

F. Written consent of surety on GULF/ARISTEO, A/V form if required by Gulf.

**12.5.** The quantities of work performed and materials furnished as established by GULF/ARISTEO, A/V, Owner or the Owner's Representative shall constitute the basis for computation of the payment to Subcontractor. Payment made on account of materials not incorporated in the work, but delivered and suitably stored, shall be in accordance with the Contract Documents. Payment is not conclusive of full performance, nor is it payment understood to be the acceptance of defective work or improper materials.

**1.3.** **Trade Breakdown.** Subcontractor shall make to GULF/ARISTEO, A/V for approval, prior to Subcontractor's first requisition for payment, a schedule of values for the Subcontract Work, aggregating the Subcontract sum. The payment breakdown shall be prepared on the form provided by GULF/ARISTEO, A/V and supported by such data as GULF/ARISTEO, A/V or the Owner may direct. This total schedule of values at which point shall be divided to show the current value of each phase of the Work in such a manner as will facilitate progress payments payable to GULF/ARISTEO, A/V from Owner and from GULF/ARISTEO, A/V to Subcontractor.

**1.4.** Subcontractor will provide an affidavit showing its labor, materials and other bills have been paid, and release and/or lien waivers, in a form satisfactory to GULF/ARISTEO, A/V and Owner. If it appears that the labor, materials or other bills incurred in the performance of the Subcontract Work are not being paid, GULF/ARISTEO, A/V may take such steps as it deems necessary to insure that the progress payments will be utilized to pay such bills.

**1.5.** **Final Release of Lien.** Subcontractor shall complete the Work and prior to final payment to Subcontractor which release from material and/or work performed and paid or to be paid to date, Subcontractor amount and shall pay all subcontractors or suppliers to Subcontractor of material, labor, equipment, services, etc., or anything else upon which a lien or bond claim may be based under applicable law unless earlier required by the Contract Documents.

1.6. **Final Payment.** Final payment constitutes a waiver of all claims by subcontractor against GULF/ARISTEO, A/V, GULF/ARISTEO, A/V to Subcontractor hereunder shall be subject to all conditions of the Subcontract, including but not limited to the occurrence of the following conditions precedent to GULF/ARISTEO, A/V's obligation to make any payment to Subcontractor:

1.6.1. GULF/ARISTEO, A/V shall have received full and final payment from the Owner for the Work of Subcontractor.

1.6.2. Subcontractor's full and proper performance of all Subcontract requirements and.

1.6.3. The acceptance of Subcontractor's Work by GULF/ARISTEO, A/V, the Owner and Architect and.

1.6.4. Evidence from the Subcontractor to GULF/ARISTEO, A/V's surety, the Owner, the Architect and the Surety are fully released from all claims and liability in connection with the Work of Subcontractor and.

1.6.5. The receipt of all consent, if required by Subcontractor's surety, if any, to the making of final payment to Subcontractor and.

1.6.6. Subcontractor's satisfaction of all Project close-out requirements set out in the Contract Documents and.

1.6.7. The receipt of any written guarantees, product data, as-built drawings, O & M manuals and other documentation required by the Contract Documents.

1.6.8. GULF/ARISTEO, A/V's receipt of the signed Final Release of Lien form as provided in paragraph 8.5 above.

1.7. **Subcontract Waiver.** If at any time there shall be evidence of any lien or claim for which it might become liable, which is chargeable to Subcontractor or shall be evidence that damage may have been caused by Subcontractor to the work, GULF/ARISTEO, A/V shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely secure itself and hold it harmless from any and all loss or damage, including legal fees and disbursements, which either may sustain on account thereof, and when such claim after all payment or become liable for in discharging such lien or claim against the Project and all expenses incurred in connection therewith and Subcontractor agrees to protect, defend, indemnify and hold GULF/ARISTEO, A/V and the Owner harmless in respect to the same.

1.8. **Payment/No-Acceptance.** No payment made under this Agreement shall be conclusive evidence of the performance by Subcontractor of its Agreement, whether wholly or in part. No payment including final payment shall be construed to be an acceptance of defective work or improper materials, nor shall entrance and use by the Owner constitute acceptance of the Work hereunder or any part thereof.

1.9. **Right to Setoff.** GULF/ARISTEO, A/V shall have the express right of setoff against sums due to Subcontractor under this Agreement for sums owed by and claimed by GULF/ARISTEO, A/V to be owed by GULF/ARISTEO, A/V (or an affiliate) under this Agreement or any other agreement by and between GULF/ARISTEO, A/V (or an affiliate) and Subcontractor (or an affiliate) or by operation of law.

2.2. **Contract Documents**

2.2.1. The Contract Documents related to this Subcontract consist of this Agreement, Exhibit "A" ("Scope of Work") and any other Exhibits attached to the Prime Contract, Drawings, Specifications, all Addenda issued by Owner prior to the execution of this Subcontract in accordance with attached Exhibit "B" ("Contract Documents"), the Project Schedule as it may be amended from time to time, any subsequent modifications or revisions, and any other documents listed or referred to in the Contract Documents specifically enumerated in any provision of the Contract Documents referenced herein. Subcontractor shall have read and understands all portions of the Contract Documents required by the Contract Documents to be included in GULF/ARISTEO, A/V's Subcontract for this Project and acknowledges that all are incorporated in this Agreement, even though the applicable one is not reprinted in this Agreement. All Contract Documents are available at all reasonable times at the office of GULF/ARISTEO, A/V for further examination by Subcontractor.

2.2.2. **Dimensions.** The dimensions given on the Plans and Specifications are approximate only and Subcontractor shall take such measurements as will ensure the proper matching and fitting of the Work covered by this Agreement with contiguous work.

**Shop Drawings.** Subcontractor shall, within thirty (30) days from receipt of this Agreement, prepare and submit to GULF/ARISTEO, A/V, for review by the Architect, Owner or the governing agency, such shop drawings, working drawings, coordination drawings, samples, brochures, cut sheets, etc., as may be necessary to completely describe the Work.

Initials [signature] [signature]

GULF/ARISTEO, A/V
Subcontract Agreement

details and construction of the Work. Shop drawings shall be submitted in quantities specified by GULF/ARISTEO, A/V, or at least three copies more in reproducible print/plan and reproducible prints (black & white) upon receipt of approved sets. Subcontractor will provide GULF/ARISTEO, A/V with approved prints, in quantities to be specified by GULF/ARISTEO, A/V. Review of these shop drawings by GULF/ARISTEO, A/V for work on the Project will not relieve Subcontractor of its obligation to perform the Work in strict accordance with the Plans and Specifications. All submittals shall be received by GULF/ARISTEO, A/V at least ten (10) days prior to the required date of submittal to the Architect or Owner.

2.2.3 **Continuous Work.** Should the proper and accurate performance of the Work included in this Agreement depend upon any work, other work not included in this Agreement, Subcontractor shall assume all necessary measures to assure continuity with the Work, and shall allow GULF/ARISTEO, A/V this contractor reasonable time to perform any such defects. In case of conflicts, the Subcontractor Agreement shall control, unless the contract Documents provide otherwise. The Subcontractor shall have the benefits of those rights, and remedies against GULF/ARISTEO, A/V which GULF/ARISTEO, A/V, by the Contract Documents, has against the Owner, except to the extent that otherwise provided in this performance obligation and responsibilities the Subcontractor assumes toward GULF/ARISTEO, A/V.

**Article 3 Scope of Work**

3.1 GULF/ARISTEO, A/V employs the Subcontractor, as an independent contractor, to perform the part of the Work which GULF/ARISTEO, A/V has contracted with the Owner to provide for the Project as set forth in Exhibit "A", (Scope of Work). Subcontractor shall be responsible for full and complete of all work included in the Agreement, including but not limited to providing all labor, materials, scaffolding, tools, hoisting, transportation, and equipment required to perform the work included in this Agreement, including but not limited to all (Clearing, Erosion Control, Earthwork/Grading, Drainage GULF/ARISTEO, A/V shall constitute the Subcontractor and be responsible for the Work. It is further understood and agreed that GULF/ARISTEO, A/V shall coordinate all the work and that Subcontractor shall perform its GULF/ARISTEO, A/V's satisfaction, at all times in regard to the progress of the Work, and shall be required to protect its own Work as well as the work of others during the performance of the Work and shall be responsible for damage to its own Work as well as the work of others caused by its acts, omissions, or negligence.

The Subcontractor is bound to GULF/ARISTEO, A/V by the Contract Documents and assumes toward GULF/ARISTEO, A/V all the obligations and responsibilities which GULF/ARISTEO, A/V assumes toward GULF/ARISTEO, A/V, the owner, Architect, GULF/ARISTEO, A/V while proceeding towards the Owner. In case of conflicts, the Subcontractor Agreement shall control, unless the Contract Documents provide otherwise. The Subcontractor shall have the benefits of those rights, and remedies against GULF/ARISTEO, A/V which GULF/ARISTEO, A/V, by the Contract Documents, has against the Owner, except to the extent that otherwise provided in this performance obligation and responsibilities the Subcontractor assumes toward GULF/ARISTEO, A/V.

**Article 4 Prosecution of Work**

4.1 Subcontractor shall commence its portion of the Work of the Work included in this Agreement at or before the time of the Subcontractor when the Work is directed to proceed in accordance with the Project Progress Schedule as set forth in Exhibit "C" (hereinafter called the "Progress Schedule") which may be revised from time to time by GULF/ARISTEO, A/V as the job details dictate at no cost to GULF/ARISTEO, A/V. The Progress Schedule may be reviewed in the Project field at any time during providing all labor, materials, scaffolding, work, hoisting, except in time when performed at such defects. Failure to perform in a timely manner shall constitute a breach of this Agreement. In no event shall Subcontractor be entitled to recover delay or interference by the reasonable construction hours, upon request. Time is of the essence in this Agreement. In the event Subcontractor delays the progress of the employee or subcontractor in any way by to act, omission or negligence cause delay in or cause other disruption of the Work, damage to any nature arising out of or resulting from working overtime, acceleration or revising the schedule. If, however, Work which may cause any damage to GULF/ARISTEO, A/V. Subcontractor shall protect, indemnify, defend and hold GULF/ARISTEO, A/V harmless, for all liability, responsibility, cost (including attorney's fees incurred through all levels of proceedings) claim or demand arising therefrom.

4.2 **Overtime.** GULF/ARISTEO, A/V may direct Subcontractor to work overtime and if it is requested Subcontractor will work said overtime and, provided Subcontractor is not in default in any of the provisions herein, GULF/ARISTEO, A/V will pay Subcontractor for the actual premium portion of overtime wages at rates which have been approved by GULF/ARISTEO, A/V plus taxes imposed by law on such additional wages, plus worker's compensation, where required to be paid by Subcontractor. In no event shall Subcontractor be entitled to impact, inefficiency or other costs of any nature arising out of or resulting from working overtime as agent, necessary to avoid delay in the completion of the Project.

4.3 Before proceeding with the Subcontract Work, Subcontractor shall check the correctness of contiguous work installed by others, and the failure to detect or report discrepancies will preclude the Subcontractor from recovery of any resulting cost, expense of damage.

4.4 The Subcontractor shall cooperate with GULF/ARISTEO, A/V and Subcontractors whose work may interfere with the Subcontract Work and shall participate in the preparation of coordinated drawings and work schedules as required by GULF/ARISTEO, A/V in the areas of completion, specifically noting and affixing GULF/ARISTEO, A/V of interference by others.

4.5 The Subcontractor will furnish periodic progress reports of the Subcontract Work as requested, including dates of delivery for materials or equipment to be provided that may be in the course of preparation or manufacture.

GULF/ARISTEO, A/V
Subcontract Agreement

initials _____

4 of 34

**4.6** **Cleanup.** Subcontractor shall promptly and continuously clean and remove from, conspicuous work any dirt which was caused by this Subcontractor, including the Work included in this Agreement, and Subcontractor shall clean up and remove daily from the Project all debris caused by its execution of the Work included in this Agreement. As Work included in this Agreement progresses or immediately following the completion of such work in an area. In the event of an accumulation of trash, waste material, dirt, or other rubbish caused by Subcontractor and other Subcontractors, then Subcontractor will contribute to a composite crew or pay a fair share of the costs. If these areas are not cleaned by the Subcontractor, it is understood and agreed that GULF/ARSTECO, A/V will complete the Work and all costs will be borne by Subcontractor.

**4.7** **Failure to Perform.** Should Subcontractor at any time refuse or neglect to supply a sufficient amount of skilled workmen or materials of the proper quality and quantity, or fail in any respect to prosecute the Work with promptness and diligence, or tend to cause by any act or omission the stoppage or delay of or interference with the work of GULF/ARSTECO, A/V or all any other subcontractor on the Project, or fail in the performance of any of the agreements on its part contained herein, or become insolvent or be adjudged bankrupt or make a general assignment for the benefit of creditors, GULF/ARSTECO, A/V may, at its option, after forty-eight (48) hours' written notice to Subcontractor, either provide any such labor or materials and deduct the cost thereof from any money due or to become due to Subcontractor under this Agreement, or terminate Subcontractor's right to proceed with the Work and, in that event, GULF/ARSTECO, A/V shall have the right to enter upon the premises and take possession, for the purpose of completing the Work, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the Work, and to provide the materials therefor. In case of such termination of the employment of the Subcontractor, Subcontractor shall not be entitled to receive any further payment under this Agreement until the said Work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this Agreement shall exceed the expense incurred by GULF/ARSTECO, A/V in finishing the said Work, such excess shall be paid by GULF/ARSTECO, A/V to the Subcontractor; but, if such expense shall exceed such unpaid balance, then Subcontractor shall pay the difference to GULF/ARSTECO, A/V. The expense incurred by GULF/ARSTECO, A/V as herein provided, either for furnishing materials or for finishing the Work, and any damage incurred through such default, shall be chargeable to and paid for by Subcontractor. GULF/ARSTECO, A/V for any breach or disagreement by Subcontractor, GULF/ARSTECO, A/V shall be entitled to any available injunctive relief, it being recognized that the same may injuriously damage GULF/ARSTECO, A/V for which there would be no adequate remedy at law. Subcontractor also assigns to GULF/ARSTECO, A/V all of its right, title, and interest in any subcontract agreements entered into by Subcontractor related to the Project and take possession. In the event of any breach of this Agreement by Subcontractor, GULF/ARSTECO, A/V pursuant to the terms of this Agreement and otherwise, arising out of any breach of the Agreement by the Subcontractor shall bear interest from the date advanced made by GULF/ARSTECO, A/V pursuant to the terms of this Agreement and agrees that the termination under this Article 4.7 shall automatically be converted to a termination for convenience under the terms of Article 9.

# Article 5 **Insurance**

**5.1** Before commencing the Work, and until completion and final acceptance of the Work, Subcontractor shall procure and maintain at its own expense, the following insurance:

**5.2** Comprehensive General Liability insurance with Project Aggregate Bodily Injury limits of $1,000,000 and Property Damage limits of $1,000,000, or a combined single limit of $1,000,000. Said insurance must, at a minimum, include endorsements for products/completed operations; contractual liability; broad form property damage; and independent contractors for production/completed operations; contractual liability; broad form property damage, and independent contractors coverage. Furthermore, liability policies must be written on an "occurrence" basis. Policies written on a "claims made" basis will not be accepted.

**5.3** Workers' Compensation and Employers' Liability Insurance in accordance with laws of the State in which the Work is situated.

**5.4** Motor Vehicle Liability insurance with Bodily Injury limits of $1,000,000 and Property Damage limits of $1,000,000, or a combined single limit of $1,000,000. Said insurance must cover all vehicles used by Subcontractor in the performance of Work under this Agreement.

**5.5** Umbrella Liability insurance with a policy limit of $1,000,000.

**5.5.1** **Insurer.** GULF/ARSTECO, A/V shall be listed as an additional insured on all liability policies required under this Agreement.

**5.5.2** **Rating.** All insurance policies must be written by companies with a current Best's rating (as set forth in their most current edition of Best's Key Rating Guide, published by A.M. Best and Company, Oldwick, New Jersey) of A V or better.

**5.5.3** **Certificate.** Before commencing the Work and as a condition precedent to payment, Subcontractor shall furnish certificates from Subcontractor's insurance company, showing that the coverages required by this Agreement are in force. Said certificate must state policy numbers, dates of expiration, policy limits and provide that the insurance will not be canceled or changed until at least thirty (30) days' written notice at least thirty (30) days prior to the date of the proposed change or cancellation.

**5.5.4** **Failure to Furnish.** If Subcontractor fails to procure and maintain required insurance, GULF/ARSTECO, A/V shall have



GULF/ARSTECO, A/V
Subcontractor Agreement

5 of 35



the right, but not the obligation to procure and maintain the said insurance be and in the name of Subcontractor and Subcontractor shall pay the cost thereof and shall furnish all necessary information to make effective and maintain such insurance.

**5.5.5** **Builders Risk.** GULF/ARISTEO, A/V or the Owner shall purchase and maintain Builder's Risk insurance (with extended coverage). If specified or otherwise required by the Contract Documents, Subcontractor is to exclusion as determined by GULF/ARISTEO, A/V, upon all Work incorporated in the Project and all materials and equipment, on or about the Project, intended for permanent use in the Project, the cost of the Work shall include in the cost of the Work, but not including any Subcontractor's machinery, tools or equipment used by Subcontractor in his performance of the Work.

**5.5.6** **Value.** The total value of the property described above as insurable hereunder and as shown on the approved monthly requisition provided for in Article I, Contract Construction, plus the total value of all material provided during the performance of the Work, shall determine the total value of Subcontractor's work and materials to be insured hereunder.

**5.5.7** **Liability.** The maximum liability to Subcontractor under the insurance shall be but not more than that proportion of any loss which the loss reported value of the insured property loss to the actual value of said property at the time of such loss. In the event Work covered hereby, the risk of loss by reason of such deductible is upon Subcontractor, and in any event Subcontractor's right to receive all or any part of any sum deductible for such loss shall be subordinated to the right of GULF/ARISTEO, A/V and/or the Owner or damage attributable to such deductible. Except for Subcontractor's right to any such insurance recovery from GULF/ARISTEO, A/V, Subcontractor waives all claims against GULF/ARISTEO, A/V and/or the Owner for loss or damage, to the extent insured against or coverable by such insurance, in the providing insuring any indemnifications and/or responsibility upon Subcontractor to GULF/ARISTEO, A/V or to any other person for any loss or damage caused by Subcontractor, his agents, servants or employees. Subcontractor agrees to pay the deductible loss, for his account of which it may concern.

## Article 6 Bond

**6.1** As a condition precedent to the execution of the Agreement to Subcontractor by GULF, Subcontractor shall furnish to GULF/ARISTEO, A/V a Performance and Payment Bond in the amount of $1,834,500.00, issued by a surety which currently holds an A.M. Best rating of A V or better and is acceptable to GULF/ARISTEO, A/V, guaranteeing the full and faithful performance of the provisions of this Agreement including but not limited to delay damages and any and all other obligations of Subcontractor under this Agreement. The cost of the Performance and Payment Bond, if any, is included in the Contract Consideration. The Work incorporated in the Project and any loss covered thereby, the risk of loss by reason of such deductible is upon Subcontractor, and in any event Subcontractor's right to business or Barton to leave bonds in the total where the Project is located or the loss of the required at any time during the performance and term of the Agreement in the conformance with Subcontractor, shall be deductible to such failure or Subcontractor.

## Article 7 Change Orders

**7.1** GULF/ARISTEO, A/V may, at any time, and without notice to Subcontractor's Surety, make changes, additions and/or deletions in the Work. If GULF/ARISTEO, A/V's authorized representative, if any such written change directive by GULF/ARISTEO, A/V, or other act or omission by GULF/ARISTEO, A/V, is understood by Subcontractor to require an increase in the Subcontract price or a corresponding change in the Subcontract schedule, then Subcontractor shall notify GULF/ARISTEO, A/V in writing of the notice within seven (7) days of the occurrence of the act or omission. Subcontractor's notification to GULF/ARISTEO, A/V shall include an explanation of the manner in which the act or omission affected, with such detail and supporting documentation as GULF/ARISTEO, A/V may require. Subcontractor price and/or schedule are affected, with such detail and supporting documentation as GULF/ARISTEO, A/V may require. Subcontractor's failure to fully and timely comply with the requirements of this subparagraph shall constitute a complete waiver of any Subcontractor claim for additional compensation or an extension of time in connection with the directive, act or omission.

**7.2** If GULF/ARISTEO, A/V requests that Subcontractor review a proposed modification or the impact that it may have on the Subcontractor's Work, or Subcontractor is requested to submit a change order proposal, Subcontractor shall respond in a writing with a change order proposal within seven (7) days from the date of the request, unless a shorter time is required by the Contract Documents. If the proposed change will affect Subcontractor's performance, there or cost, Subcontractor shall identify any such items in the response. If a change is directed by the change, any such item may be submitted by Subcontractor by a cost breakdown which shall include a quantity survey, unit prices, and unit labor hours, applicable material cost of every item consistent with the estimate. Subcontractor proposal for additional costs or time shall be submitted in writing to GULF/ARISTEO, A/V. To comply with any applicable provisions of the Contract Documents. If Subcontractor fails to timely and properly respond to a request for a proposed modification of the Project Work, Subcontractor agrees that it shall be bound by the good faith estimate of GULF/ARISTEO, A/V with respect to the effect of the proposed change on Subcontractor's price and schedule, and that any such estimate submitted by GULF/ARISTEO, A/V shall be the Owner shall establish the maximum equitable adjustment to which Subcontractor may be entitled.

**7.3** Notwithstanding any inability to agree upon the appropriateness of a change order or on the cost or time impact of that change

order. Subcontractor agrees that it shall, if directed in writing by GULF/ARISTEO, AJV, proceed with the performance of the directed work.

7.4 Subcontractor shall keep accurate, detailed and separate records of the costs of any change and of such report such costs to GULF/ARISTEO, AJV at such times and in such manner as required by GULF/ARISTEO, AJV certified costs of all time basis, receiving and inspection reports, and all other documentation required by GULF/ARISTEO, AJV to establish the cost or value of Subcontractor changed work.

7.5 Time and material basis must be documented separately by Subcontractor; the documentation signed daily by GULF/ARISTEO, AJV authorized representative and incorporated monthly no later than (5) working days from the date in which the work was performed. If work performed under a GULF/ARISTEO, AJV directive extends beyond (one (1) week, then a written statement must be forwarded by Subcontractor monthly with the issue otherwise marked "Final". Subcontractor's failure to submit the foregoing time sheets and documentation daily to GULF/ARISTEO, AJV in such event shall be deemed a material breach and work, regardless of whether GULF/ARISTEO, AJV has signed for the additional work, shall be the parties agree that Subcontractor shall be held to a proper evaluation of the work can be performed adequately only if Subcontractor complies timely with the obligations contained herein. Project Manager or General Superintendent is authorized to sign line items or other documentation of changed work, or to acknowledge back charges.

7.6 Subcontractor signing a change order shall constitute a full, final and complete waiver and settlement of any and all claims and counterclaims Subcontractor has or may in the future have arising out of or relating to the change order; the events upon which the change order is based, or the impact of the change order work on the unchanged work. Subcontractor to reserve or preserve additional claim rights, notwithstanding Subcontractor's acceptance of a change order, shall be effective unless GULF/ARISTEO, AJV and Subcontractor each agree in a separate writing signed by both parties contemporaneously with Subcontractor's acceptance of the change order, to the specific terms, conditions, scope and duration of such reserved rights.

7.7 Subcontractor charges for changed work will be computed as follows:

7.7.1 Owner Initiated Change Order. Subcontractor's reasonable and actual cost computed as stipulated in the Contract Documents plus Subcontractor's overhead and Profit as stipulated by the Contract Documents or as otherwise approved by the Owner, Architect and/or GUE.

7.7.2 GULF/ARISTEO, AJV Initiated Change Order. Subcontractor shall be entitled to its reasonable, actual and direct costs of the related labor, material and equipment, but with no additional mark-up for overhead and profit.

7.7.3 Subcontractor Charges to Other Subcontractors. Subcontractor shall be entitled to its reasonable, actual and direct costs of labor, material and equipment, but with no additional mark-up for overhead and profit.

7.8 In the event that GULF/ARISTEO, AJV back charges to any Subcontractor for any delay or deficiency, GULF/ARISTEO, AJV shall be entitled to its actual costs of labor, materials, equipment, supervision and Subcontractor costs, but with no additional mark-up for GULF/ARISTEO, AJV overhead and profit.

7.9 Payment on account of pending charges made by the Owner shall be made only if, and then only when, GULF/ARISTEO, AJV receives such payment from the Owner for the work for which the Subcontractor is seeking payment. Charges are provisional and are not an admission of liability and shall be repaid to GULF/ARISTEO, AJV on demand whenever GULF/ARISTEO, AJV determines that there has been an overpayment. Any costs incurred by Subcontractor as a result of oral change directives or writings not signed by an authorized representative of GULF/ARISTEO, AJV shall be for Subcontractor's account, and Subcontractor waives any and all rights to claim from GULF/ARISTEO, AJV or Owner for such costs or for additional performance time resulting from the performance of such work.

## Article 8 Extension of Time

8.1 Should Subcontractor's performance of this Agreement be delayed, hindered, suspended, disrupted, impacted or otherwise interfered with, or made more difficult for any reason beyond the control and without the fault or negligence of such causes would entitle GULF/ARISTEO, AJV to an extension of time under the Contract Documents, then the time herein fixed for the completion of Subcontractor's Work shall be equitably extended for a period appropriate to this time but by reason of any such causes to the Subcontractor's elsewhere. Other anything to the contrary elsewhere herein, Subcontractor agrees not to make and hereby waives, any claim for any increase in the Subcontract price or for damages or additional compensation on account of any delay, regardless of the extent or nature, hindrance, suspension, disruption, impact, interference, or other cause related to the performance of this Agreement. Subcontractor's sole and exclusive remedy as a result of any such delays, hindrance, suspension, disruption, impact, interference or other cause related to the Subcontractor's performance is delayed solely as a result of causes for which the Owner or its agents are liable, and provided the Owner pays additional compensation to GULF/ARISTEO, AJV for Subcontractor damages as a result of any such delays, Subcontractor shall be entitled to that portion of any such Owner payment which represents Subcontractor damages. If any such payment from the Owner fails to designate specifically the extent to which Subcontractor delay damages are represented in the payment, then Gulf, in its sole discretion, shall make that determination and Subcontractor agrees to be finally bound thereby.

8.2 Subcontractor's entitlement to a time extension, and the granting of the time extension to which Subcontractor is entitled hereunder, may be granted during the course of the Work, or in connection with the final payment to Subcontractor, at GULF/ARISTEO's election, and the timing of the time extension shall be without cost or adverse consequences to Gulf/Aristeo.

GULF/ARISTEO, AJV
Subcontract Agreement

Initials

7 of 35

8.3 Subcontractor is entitled to an extension of time, or to recover delay damages — additional compensation actually paid by the Owner to GULF/AIRSTEO, A/V for Subcontractor's benefit, as provided herein, are subject to each of the following conditions precedent:

8.3.1 Within seventy-two (72) hours of the commencement of any condition giving rise to any delay, disruption, or interference, unless a shorter time is required by the Contract Documents, Subcontractor shall notify GULF/AIRSTEO, A/V in writing of the delay or interference. The notice shall be provided in time and in turn sufficient to allow GULF/AIRSTEO, A/V to comply with any notification to the Owner required by the Contract Documents.

8.3.2 The notice of delay shall be submitted in sufficient detail, and with any requested supporting documentation, so as to demonstrate to GULF/AIRSTEO, A/V's satisfaction the following:

  A. That the delay or interference was not within the Subcontractor's responsible control;

  B. That the delay or interference delayed the critical path of the Progress Schedule;

  C. That there are not concurrent delays for which Subcontractor is responsible;

  D. The proposed timing and nature of the reasonable and prudent steps to be taken to mitigate the effect of the delay or interference.

8.3.2 Any request for a time extension based in part on an alleged manpower shortage must be accompanied with conclusive evidence of Subcontractor's efforts to obtain manpower shortage in fact exists.

8.4 Subcontractor's failure to fully and timely comply with each of the aforementioned conditions precedent shall result in a waiver and release of any claims for time extensions, or for additional cost or compensation, which Subcontractor may have pursuant to this Agreement.

8.5 Without limiting the foregoing, Subcontractor acknowledges that it will not be entitled to an extension of time for normal bad weather, or for conditions relating to the accessibility and clean-up of the site which could have been taken into account prior to the execution of this Subcontract.

## Article 9 Termination for Convenience

9.1 GULF/AIRSTEO, A/V shall have the right to terminate the Subcontract, by written notice, without Subcontractor being at fault, for any cause at any time, or for its own or the Owner's convenience, upon written notice to Subcontractor, and require Subcontractor to immediately stop work. In such event, GULF/AIRSTEO, A/V and any Subcontractor for its own work actually performed and for amount payable to the Subcontractor. If the reason for termination is due to any other costs not for prospective profits on work not performed, and the reason that such GULF/AIRSTEO, A/V shall not be liable to dispute and for any sum greater than that which GULF/AIRSTEO, A/V receives from Owner with respect to Subcontractor's performance, less any cost incurred by GULF/AIRSTEO, A/V. Any default termination subsequently determined to have been made in error shall be treated as a termination for convenience.

9.2 If GULF/AIRSTEO, A/V's contract has been terminated by the Owner, GULF/AIRSTEO, A/V's right to terminate the Subcontractor for any such greater than that which GULF/AIRSTEO, A/V receives from Owner with respect to Subcontractor's performance, provided for herein, the parties shall have no further obligation to each other, except for the obligations of Subcontractor and its Surety, if any, to perform corrective and/or guarantee work pertaining to work actually performed by and through Subcontractor prior to termination, and to indemnify GULF/AIRSTEO, A/V as provided for in this Agreement.

9.3 In the event that GULF/AIRSTEO, A/V terminate Subcontract for any cause under this Agreement, and it is later determined that any applicable dispute proceeding that such termination for cause was not justified, then the parties acknowledge and agree that the termination for cause shall automatically be converted to a termination for convenience under the terms of this Article.

## Article 10 Claims and Disputes

10.1 If any controversy or dispute shall arise between GULF/AIRSTEO, A/V and Subcontractor at any nature which the parties hereto do not promptly settle and resolve, then upon written order from an executive officer of GULF/AIRSTEO, A/V, Subcontractor shall proceed so as not to delay the Work in accordance with such written order. In all events, Subcontractor shall file with GULF/AIRSTEO, A/V within seven (7) days from the event giving rise to the controversy or dispute its written claim and/or its claim for the cost and/or any impact of performing the disputed Work, otherwise, any claim of Subcontractor for such disputed Work shall be void.

10.2 Administrative Remedies. If Subcontractor makes a claim in connection with (1) change required by the Owner or (2) any dispute arising out of the Owner's or its authorized representative's action in administration of the Contract Documents, disputes relating to any acts or instances of deficiencies or ambiguities in the Plans and Specifications, Subcontractor shall proceed in accordance with the administrative remedies provided for in the Contract Documents and shall exhaust its



GULF/AIRSTEO, A/V
Subcontract Agreement

Initials _____

10.3 **Disputes Under $50,000.** Except as provided for in Subparagraph 10.5, any controversy or claim, with a disputed amount of $50,000 or less (unless when taken with other pending bona fide disputes the same aggregate in excess of $50,000), which has not been resolved pursuant to the procedures contained in this Article shall be settled in accordance with the provisions provided herein, shall be settled by binding arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof. The parties agree that no decision or order in any case Subcontractor shall share proportionally in the cost of that proceeding (including GULF/AIRSTEO, A/V's attorney's fees) and shall be bound by the decision of the Arbitrator. Any disputes commenced by Subcontractor or Contract Documents covered by this Paragraph, that each party shall be limited for two hours for the presentation of its claim position, and that the arbitration hearing shall be held in Broward County, Florida.

10.4 **Consent to Joinder.** In the event that GULF/AIRSTEO, A/V is a lawsuit or arbitration, or other Alternative Dispute proceeding (ADR) with a third party, and Subcontractor is joined in such proceeding or is joined as a party to that arbitration, litigation or ADR proceeding, should GULF/AIRSTEO, A/V so elect in the exercise of its sole discretion. Without joining Subcontractor in any such dispute with a third party, GULF/AIRSTEO, A/V may invite Subcontractor to attend and participate in the resolution of claim related to the Construction industry, including those costs incurred in appellate proceedings. For the purpose of this Agreement, a party shall not be considered as "prevailing party" if its recovery shall be less than 75% of its claim amount.

10.5 **Attorney's Architect and Special Matter Fees.** Subcontractor and GULF/AIRSTEO, A/V agree that in the event arbitration proceedings, litigation or ADR proceeding, Subcontractor's non-prevailing party shall be liable for all reasonable fees and costs, attorney's fees paid for the benefit of GULF/AIRSTEO, A/V or in the event of proceedings or any subject of attorney's fees and costs incurred in appellate proceedings and whether or not any litigation or arbitration proceeding shall have been initiated.

10.6 **Work Continuation.** Subcontractor agrees to continue the performance of the Work and to proceed in accordance with a mutual breach of the Contract, regardless of the ultimate outcome of the dispute, it being understood and agreed that any controversy or breach of the parties shall not constitute a basis to delay, suspend, disrupt or hinder any legal action against GULF/AIRSTEO, A/V.

10.7 Subcontractor accepts responsibility for all the costs incurred by GULF/AIRSTEO, A/V resulting from any and all breaches of this Agreement, and all covenants and conditions of this Agreement including any attorney's fees, court and other costs incurred, whether or not litigation or arbitration or correction hereof, or as a result of Subcontractor's making any Subcontractor, and requiring them or occurring in connection with the failure of Subcontractor or any party for whom Subcontractor is responsible, to perform all Work required within the scope of the Subcontract in strict accordance with the Subcontract and Contract Documents.

**Article 11 Liability for Damage and Personal Injury**

11.1 To the fullest extent permitted by law, Subcontractor and its Surety, if any, agree to indemnify and hold GULF/AIRSTEO, A/V harmless of and from all claims, losses, causes of action and the like (including attorney's fees expert witness fees and all incidental or attorney's fees), which may be asserted against GULF/AIRSTEO, A/V or its Surety by any person or Subcontractor, and requiring them or occurring in connection with the failure of Subcontractor or any party for whom Subcontractor is responsible, to perform all Work required within the scope of the Subcontract in strict accordance with the Subcontract and Contract Documents.

11.2 Subcontractor and its Surety agree to indemnify and defend, if requested, and to hold harmless GULF/AIRSTEO, A/V and/or Owner, their agents, employees, servants and assignees, of and from any cost, damage or expense (including legal fees, expert witness fees and other dispute procedure costs) incurred because of:

11.2.1 Allegations of infringement of any letters patent or patent rights with respect to the work, materials or equipment used by Subcontractor, its subcontractors or suppliers.

11.2.2 Claims or liens for labor performed or materials used or furnished through or under Subcontractor for the Project and for



GULF/AIRSTEO, A/V
Subcontract Agreement

Initials [signature]

11.2.3   Subcontractor's failure, or the failure of anyone for whom Subcontractor is liable, to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to any safety health or environmental requirement, as well as any governmental requirement with respect to the employment or payment of independent contractors on the Project; or

11.2.4   Subcontractor's failure or the failure of anyone for whom Subcontractor is liable, to comply with applicable when Subcontractor is not then entitled to be paid pursuant to the terms of the Subcontract.

11.3   Subcontractor agrees to (1) fully insure against, and (2) indemnify, defend (if requested by GULF/ARISTEO, A/IV and hold harmless, GULF/ARISTEO, A/IV from and against any loss, damage or expense (including legal fees in whose claim, in whole or in part, of any person, other dispute procedure costs) incurred because of any injury, loss or damage, loss of liability, loss of services of any person, whether employee or otherwise, and which damage, loss or injury arises out of or results from, or in connection with, in whole or in part, the Work provided for in this Agreement, or by reason of any act, omission, fault or negligence, active or passive, of Subcontractor, whether or not also caused or alleged to be caused in part, and including any injury, loss or damage caused in part, in whole or in part by the negligence of GULF/ARISTEO, A/IV, and Subcontractor shall not be required to indemnify an indemnified party for its sole negligence.

11.4   Independent of the duty to indemnify, as set out in Subsection(s) (11.1) and (11.2) above Subcontractor undertake a separate duty to defend (if requested by GULF/ARISTEO, A/IV with respect to the claims, losses and causes of action covered in Subparagraphs (11.4.1) and (11.4.2) herein. Subcontractor's duty to defend is defined as follows:

11.4.1   GULF/ARISTEO, A/IV, in its sole discretion and at its sole option, may defend any and all the covered claims, or tender to Subcontractor the defense of any or all of the covered claims. Upon any such tender, Subcontractor shall be bound and obligated to immediately defend and settle and to pay, liquidate, discharge and satisfy, in full and adjust and defend any such claim in the defense of GULF/ARISTEO, A/IV, and assume the defense of GULF/ARISTEO, A/IV and agree to pay all damages, awards or expenses resulting from or arising out of the claims covered by this paragraph, without reimbursement from GULF/ARISTEO.

11.4.2   Subcontractor's duty to defend arises irrespective of the validity or invalidity of the claims made, and regardless of whether GULF/ARISTEO, A/IV is obligated to defend for a period at time or to participate in Subcontractor's defense of GULF/ARISTEO, A/IV or any party indemnified herein.

11.4.3   If GULF/ARISTEO, A/IV tenders the defense of a covered claim to Subcontractor, and if Subcontractor fails or neglects to assume the adequate defense thereof, GULF/ARISTEO, A/IV may undertake a defense and may compromise or settle any such claim or action, and Subcontractor shall be bound and obligated to reimburse GULF/ARISTEO, A/IV for the amount expended in connection, satisfying or settling any such claim, together with all reasonable attorneys' fees, and all other costs of any dispute proceeding or defensive action.

11.5   In the event of any loss, damage, claim or injury contemplated by this article, GULF/ARISTEO, A/IV may withhold from any payment due or to become due to Subcontractor an amount sufficient in GULF/ARISTEO, A/IV's judgment to protect, secure and indemnify it from any and all such claims, expenses (including legal fees and disputes proceeding costs), losses or damage. In the alternative, GULF/ARISTEO, A/IV, at its option, may accept such bond, if any, in an amount, and from a surety, satisfactory to GULF/ARISTEO, A/IV and guaranteeing the indemnity protection required hereunder.

11.6   Neither the final payment by GULF/ARISTEO, A/IV, nor acceptance of the work performed by Subcontractor, nor the termination of this Agreement shall release or diminish the foregoing Subcontractor duties to indemnify and defend GULF/ARISTEO, A/IV and others.

11.7   Subcontractor acknowledges and agrees that the that one hundred dollars ($100.00) of the Subcontract price to be paid represents the specific consideration for all the indemnification provided by Subcontractor and required by the terms of the Subcontract and all other Contract Documents made a part hereof.

11.8   The indemnification obligations under this Agreement shall not be restricted in any way by any limitation on the amount or type of damages, compensation or benefits payable by or to Subcontractor under workers compensation acts, disability benefit acts or other employee benefit acts, and shall extend to and include any and every claim of any employee of the Subcontractor or of any hired party to whom Subcontractor may subcontract a part or all of the Work.

**Article 12 Damage to Work**

12.1   Subcontractor shall at all times and at its expense protect all labor, materials, supplies, tools and equipment against any loss, damage, injury, destruction, theft or loss and, in no event, shall GULF/ARISTEO, A/IV be liable or responsible for any loss, damage to, theft or its machinery, labor, and materialmen, for all of which Subcontractor shall be solely responsible. Subcontractor shall promptly repair or replace damage to the work of others, or to any part of the Project, resulting from its activities.

**Article 13 Compliance with Law and Safety**

13.1   All work, labor, services and materials to be furnished by Subcontractor must strictly comply with all applicable federal, state and local laws, rules, regulations, codes, ordinances and directives (hereinafter "Laws") now in force or hereafter in effect. All work, labor, services or materials necessary to comply with said Laws will be furnished by Subcontractor without any additional compensation. Subcontractor agrees to indemnify and save GULF/ARISTEO, A/IV and

GULF/ARISTEO, A/IV
Subcontract Agreement

Initial _____

10 of 25

Owner harmless from and against any and all claims, loss or expense caused directly or indirectly by, is taken to fully comply herewith. Subcontractor agrees that the prevention of accidents to workmen engaged in the work under the Subcontract is solely its responsibility.

13.2 Subcontractor specifically agrees to take appropriate precautions to ensure the safety of all persons, including not limited to its own employees, sub-subcontractors, and subcontractors, whose safety might otherwise be jeopardized by any and all precautionable risks of physical harm, or by any other acts of harm, relating to or arising out of the work. Subcontractor shall further be liable for any and all safety related damages by and to all subcontractors employed by Subcontractor and indemnify GULF/ARISTEO, A.IV and/or Owner to protect the progress of the work, by GULF/ARISTEO, A.IV Subcontractor shall indemnify and implement a safety program for the work.

13.3 If requested, Subcontractor shall submit its safety program for review by GULF/ARISTEO, A.IV. Any review of the safety program by GULF/ARISTEO, A.IV shall not release Subcontractor's liability by way of diminish Subcontractor's liability by way of implementation of such Subcontractor's safety program, to ensure GULF/ARISTEO, A.IV. Any work Subcontractor shall be under the work which GULF/ARISTEO, A.IV deems unsafe until such safety related measures satisfactory to GULF/ARISTEO, A.IV have been taken. Should Subcontractor neglect to adopt such corrective measures, GULF/ARISTEO, A.IV may do so and deduct the cost from payments due to Subcontractor.

13.4 Subcontractor shall keep all corrective measures on behalf of the Subcontractor shall in no way release Subcontractor, or diminish Subcontractor's liability by way of indemnify or otherwise as assumed by Subcontractor under the subcontractor. Subcontractor shall immediately forward copies of all accident and injury reports to GULF/ARISTEO, A.IV, and monthly tabulations of injuries and man-hours worked during preceding month.

## Article 14 Patents

14.1 Subcontractor agrees to pay all royalty and license fees and to indemnify and hold harmless GULF/ARISTEO, A.IV and Owner for any and all loss, damage or expense to which they may be put from claims or litigation for the use or misuse of any patented or unpatented invention or process, used or furnished by Subcontractor, unless required by the Contract Documents and not originated or prepared by Subcontractor.

## Article 15 Assignment & Transfer

15.1 Neither this Agreement nor the monies to become due hereunder shall be assignable by Subcontractor without the prior written consent of GULF/ARISTEO, A.IV, and any assignment without such consent in writing shall void no right or action in the assignee against GULF/ARISTEO, A.IV until such time as the Project has been completed, and all provisions precedent under this Agreement have been performed. In the event Subcontractor has not further obligations under the Agreement, Subcontractor shall not subcontract any part of this Agreement without prior written consent of GULF/ARISTEO, A.IV.

The contract obligations assumed by GULF/ARISTEO, A.IV in this Agreement are not intended to benefit any third party to the extent Subcontractor shall have for himself a liquidated damage and therefore shall be subject to the provisions of this Paragraph. Consent to any assignment shall be construed to be an assignment hereunder, and therefore shall be subject to the provisions of this Paragraph. Consent to any one assignment shall not be construed to be a consent to any subsequent assignment by GULF/ARISTEO, A.IV may be for any reason withheld. This Agreement shall be binding in whole or in part, by GULF/ARISTEO, A.IV. Upon any such assignment, by Agreement, GULF/ARISTEO, A.IV shall be released from any and all liability hereunder accruing from and after the date of said assignment.

## Article 16 Guarantee

16.1 Subcontractor hereby guarantees the Work to the full extent of the provisions of the Contract Documents. Without limiting the generality of the preceding sentence, unless a longer period is provided in the Specifications or General Conditions, Subcontractor shall repair or replace at its own expense and at the convenience of the Owner, any defects in workmanship or materials discovered within one (1) year from the date of the acceptance of the Work included in this Agreement.

1.2 The Guarantee/Warranty period will begin on the first day following the date of written acceptance of the Work by the Owner, Architect and GULF/ARISTEO, A.IV. The Guarantee/Warranty of Subcontractor shall inure to the benefit of GULF/ARISTEO, A.IV, its benefit and for the benefit of the Owner and its successors, or the owner may be endorsed directly by such Owner and its successors.

16.3 Should there be imposed upon Subcontractor by applicable law any implied warranty of fitness as to work or materials furnished Subcontractor shall comply herewith, subject to the validity of any such law and any defense thereto which may be available to Subcontractor. Subcontractor shall pay for all damage to the Project resulting from defects in the Work and all expenses necessary to remove, replace and/or repair the Work and any other work which may be damaged in removing or replacing the Work.

## Article 17 Labor Relations

17.1 Subcontractor shall do whatever is necessary in the progress of its work to assure harmonious labor relations at the Project and shall prevent strikes or other labor disputes. Subcontractor shall employ only such labor that will work in harmony on the job and shall not use materials or employ means which may cause strikes or other labor trouble.

17.2 Lower tier Subcontractors shall comply with this article in the same extent as Subcontractor, and an express provision including such provisions on lower tier Subcontractors shall be included in each Subcontracts. Subcontractor shall indemnify

GULF/ARISTEO, A.IV
Subcontract Agreement



17.3 Subcontractor shall be responsible for the jurisdiction disputes and claims by crafts over Work included in this Agreement and shall not employ Subcontractor employees which, in any case arises out of or any dispute over the Work or related to or in connection with the location hereinbefore mentioned. Should Subcontractor fail to carry out these provisions or related to or in connection with the location hereinbefore mentioned. Should Subcontractor fail to carry out these provisions as accepted at GULF/AIRISTEQ, A/V shall in any event, after forty-eight (48) hours written notice to it thereof be relieved to the extent of the provisions of GULF/AIRISTEQ, A/V. Subcontractor, or any part thereof or the arrangements of Subcontractor for the Work and to GULF/AIRISTEQ, A/V may, for the purpose of completing the Work, enter upon the premises and take possession, in the same manner and upon the same condition as are described in Article 4.7.

**Article 18 Legal and Operational**

18.1 During performance of the work, Subcontractor shall not discriminate against any employee or applicant for employment. Subcontractor will be responsible and ensure, age or national origin. Subcontractor shall comply with any equal opportunity or affirmative action requirements or plans as may be set forth in the Contract Documents or is in any exhibit attached hereto.

**Article 19 Miscellaneous**

.1 **Conditions Precedent.** Should GULF/AIRISTEQ, A/V not be selected as General Contractor for the Project for any reason, or if the Subcontractor shall decline to prosecute the Agreement is null and void without obligation of either party to the Owner, Engineer and Architect. Subcontractor's is contingent upon Subcontractor being appointed as an acceptable subcontractor by the Owner, Engineer and Architect. Subcontractor's A/V shall not, by the issuance of a notice of intent to award such subcontractor that GULF/AIRISTEQ, A/V agree to this contract.

19.2 **Subcontractor Due Diligence.** Should Subcontractor has familiarized itself with the construction site and all site conditions, surrounding streets, nearby structures, utilities, access and completion, and all laws, ordinances and regulations; the use of such request and requirements of GULF/AIRISTEQ, A/V with respect to all acceptable conditions relating to the delivery, storage, handling hoisting, rigging or furnishing of any and all material, equipment or labor. Subcontractor agrees to comply with all reasonable request and requirements of GULF/AIRISTEQ, A/V with respect to site appearance, access and staging; and further agrees that Subcontractor further warrants that it has carefully studied the plans, specifications and other Contract Documents and confirms that it has found the Contract Documents adequate for the intended purpose. Should during the course of Subcontractor's review of the Contract Documents any discrepancies, conflicts or deficiencies shall have been discovered, Subcontractor shall at once report in writing such discrepancies, conflicts or deficiencies to GULF/AIRISTEQ, A/V. Failure of Subcontractor to report such discrepancies, conflicts or deficiencies shall be construed as confirmation that the Contract Documents are adequate and no claims will be made on such conditions.

18.3 **Fumes.** Subcontractor will be responsible for supplying his own fan, water, caps, dispensers, etc. for all of Subcontractor's employees during the course of the Work.

18.4 **Parking and Transportation.** It is understood and agreed that any employee parking and transportation required for Subcontractor's employees is a part of this Agreement and is to be paid for solely by Subcontractor.

18.5 **Coffee Breaks.** All coffee breaks shall be taken at designated workstations and at times allowed by GULF/AIRISTEQ, A/V only.

18.6 **Indemnity; Construction.** Subcontractor acknowledges and agrees that the One Hundred Dollars ($100.00) of the Contract Consideration represents the specific consideration paid by GULF/AIRISTEQ, A/V for all the indemnification from Subcontractor to GULF/AIRISTEQ, A/V and Owner under the terms of this Agreement.

18.7 **Contract Documents.** This Agreement includes the Contract Documents as included on Exhibit "B" attached to and made part hereof.

18.8 **As-Builts.** Subcontractor shall maintain current As-Built Drawings for periodic review by GULF/AIRISTEQ, A/V and Architect. Subcontractor shall provide at no cost to GULF/AIRISTEQ, A/V, one (1) set of As-Built Drawings prepared on clear, reproducible backed paper, stable, or mylar print paper and two (2) sets of blue line prints. As-Built Drawings are to be accurate and Subcontractor is responsible for said accuracy and corrections of said As-Built Drawings. Submittal of As-Built Drawings accepted by GULF/AIRISTEQ, A/V will be a condition precedent to final payment.

18.9 **Contract Requirement.** Subcontractor is responsible for presenting to GULF/AIRISTEQ, A/V information relative to the Work following, including in requirements, slower locations, and/or other information required for proper coordination of the Work described in this Agreement along with other work required by the job. All slower locations must be approved by the Architect, Project that naming and the subdivision of same into categories (foreman, tradesmen, laborers, apprentices, et cetera) and other information as GULF/AIRISTEQ, A/V may reasonable require. Subcontractor's superintendent shall be subject to approval of GULF/AIRISTEQ, A/V.

18.10 **Subcontractor's Subcontractors.** Subcontractor shall furnish a competent superintendent and an adequate supply of men and equipment to maintain the Program Schedule and provide a safe and proper installation. Subcontractor's superintendent shall maintain schedules and supervise the performance of Subcontractor's phase of work in coordination with GULF/AIRISTEQ, A/V. Subcontractor's men shall work only on the Project. The report will state the number of men Subcontractor has on the Project that naming and the subdivision of same into categories (foreman, tradesmen, laborers, apprentices, et cetera) and other information as GULF/AIRISTEQ, A/V may reasonable require.



18.11   This Agreement shall be construed and governed by the laws of the State of Florida.

18.12   This Agreement shall be binding on and inure to the benefit of the heirs, successors, and assigns of the parties hereto.

18.13   All sections and headings are used for convenience only and do not affect construction or interpretation of this Agreement.

18.14   The following exhibits are attached hereto and made part hereof:

Exhibit A - Scope of Work

Exhibit B - Contract Documents

Exhibit C - Project Schedule

Exhibit D - Monthly Requisition Forms

Exhibit E - Partial Lien Waiver/Final Lien Waiver

Exhibit F - Certificate of Insurance

Exhibit G - Asbestos Statement

Exhibit H - Warranty Form

Exhibit I - City of Miramar Material Checklist

Exhibit J - City of Miramar Final Survey Requirements

Exhibit K - City of Miramar Final Engineering Checklist

Exhibit L - Direct Owner Purchase Procedures

Done and signed the year first above written.

SEAL ATTEST:

By: _____

John G. Cynkar, President

GULF/AJ/STEC, A/V

CGICA 16662

Subcontractor: _____

Subcontractor Occupational License Number: _____

Subcontractor State Certification Number: _____

Subcontractor State Register Number: _____

Subcontractor Federal Identification Number: _____

GULF/AJ/STEC, A/V
Subcontract Agreement



13 of 35

Initials
24

Exhibit "A"

Scope of Work

## GENERAL REQUIREMENTS

1. Subcontractor is aware the Project contains provisions for the assessment of liquidated damages as outlined in the Contract Documents. In the event the time of completion is not met, Subcontractor may become liable for such liquidated damages in addition to other delay costs incurred by GULF/ARISTEO, A/V as a result of any delay to the Project Completion. Furthermore, in the event of default or bankruptcy on the part of Subcontractor, GULF/ARISTEO, A/V will be paid by Subcontractor an administrative cost of ten (10%) percent of the Contract Amount remaining at the time of default and or bankruptcy plus all attorney fees incurred by GULF/ARISTEO, A/V.

2. Should GULF/ARISTEO, A/V not be selected as General Contractor for the Project for any reason, or should the Owner decide not to proceed, this Contract is null and void without obligation of either party to the other. Furthermore, the Contract is contingent upon Subcontractor being approved as acceptable by the Owner.

3. Subcontractor acknowledges it has read all portions of the Specifications and General Conditions which includes specific provisions to Subcontractors or Purchase Orders is hereby acknowledged to be included in this Agreement even though the specific task is not inverted in this document.

4. To help ensure a safe, healthy and productive work environment for the employees of GULF/ARISTEO, A/V and others, to protect GULF/ARISTEO, A/V's property, and to assure efficient operations, GULF/ARISTEO, A/V has developed a Company-wide policy establishing a drug and alcohol free workplace. GULF/ARISTEO, A/V reserves the right to test any suspicious employee at anytime and shall have the right to remove the employee from the premises for the remaining construction period.

5. Subcontractor agrees to provide GULF/ARISTEO, A/V with all information necessary, including but not limited to, contact persons, phone numbers, purchase order numbers, copies of purchase orders or any other information necessary for GULF/ARISTEO, A/V to verify and confirm the delivery schedule of all items furnished by Subcontractor under this Subcontract Agreement. This paragraph is in no way shall be construed to limit or shift Subcontractor's responsibility to expedite and deliver materials to the jobsite as required by the Progress Schedule and to avoid job delays.

6. Subcontractor's attendance at GULF/ARISTEO, A/V's weekly Subcontractor's Progress Meetings is mandatory beginning two weeks prior to starting Subcontractor's work or as otherwise requested by GULF/ARISTEO, A/V and when Subcontractor has been notified by the Project Superintendent and Subcontractor's Project Manager shall attend the weekly meetings. Failure to attend is a violation of this Agreement and will be treated accordingly.

7. To this fullest extend permitted by law, Subcontractor agrees to indemnify and defend, if requested, Contractor or Owner, their agents, employees, servants and sureties, of and from any loss, damage, expense or cost (including legal fees, expert witness fees, and other claims procedure costs) incurred as a result of:

   A. Any injury, loss or damage, of any kind or nature, to any property or person, and which damage, loss or injury arises out of or in connection with, in whole or in part, the performance of Subcontractor's work or by reason of any act, omission, fault or neglect, whether active or passive, of Subcontractor or anyone for whom Subcontractor is responsible, and including any injury, damage or loss caused, or alleged to be caused, in part, by the act or omission or any party indemnified herein; or

   B. Any failure of Subcontractor or of those for whom Subcontractor is responsible, to diligently, properly, timely, and fully perform each of the contract obligations imposed upon Subcontractor by this contract and by any other contract document included as a part hereof.

8. Subcontractor acknowledges that the first one hundred dollars ($100.00) of the contract price to be paid represents the specific and adequate consideration that he incidently obligation set out herein and in any other contract document.

   A. Subcontractor shall be responsible for all labout and completion of all work included in this agreement, including but not limited to providing all supervision, labor, materials, scaffolding, tools, hoisting facilities, cranes and equipment required to perform and complete the work included in this Agreement.

   A. Temporary safety rails, fall protection, ladders, platforms, and handrails as required by OSHA.

   B. Submittals including but not limited to permits, notices authorizing wor, MOT and inspection reports, or as maybe further required in the plans and specifications and GULF/ARISTEO, A/V.



GULF/ARISTEO, A/V
Subcontract Agreement

initials

09/28/2009 04:16 PM

C. Subcontractor is to inspect and accept the site conditions

D. Daily progress reports delivered to GULF/AIRSTEO, A/V's jobsite trailer by 7:00 am for the previous day's work. The report must include total manpower, areas completed, materials installed and hours worked.

E. Water and Ice for Subcontractor's own workers.

F. Removal of all debris and trash accumulated from the prosecution of the Work to an approved location.

G. All permits and fees shall be paid by the Owner.

H. Owner possesses the authority to make Direct Purchase of materials for tax savings purposes. Subcontractor shall coordinate with CM as required. See attachment for DPP procedures.

## CATEGORY #2a

### SCOPE OF WORK: SITEWORK

### SITEWORK --Complete Site Development

The above Scope of Work represents a narrative description only of the activities to be performed under this CATEGORY, which is referred to as "The Work" and further defined below. Provide all labor, materials, equipment, layout and supervision necessary and material to completely furnish and install "The Work". This includes all required insurance, permits, licenses, fees, taxes, bonds, storage facilities and all other incidentals for a completed installation. All work will be to the highest standards and in full compliance with all applicable codes, regulations, and requirements. The work will comply with all applicable local codes, regulations, and be in accordance with all safety and job specific Special Conditions listed. The work shall include, but not be limited to, the following:

| SPEC. # | TITLE | COMMENTS |
| --- | --- | --- |
| 01010 | Summary of Work | As it applies to the work of this category |
| 01060 | Field Engineering | |
| 01590 | Barriers | |
| 01570 | Traffic Control | |
| 01500 | Material & Equipment | As it applies to the work of this category. |
| 01600 | Testing Piping Systems | |
| 02110 | Clearing & Grubbing | |
| 02111 | Site Grading | |
| 02220 | Trenching, Backfilling & Compacting | |
| 02060 | Finish Grading | |
| 02350 | Soil Treatment | |
| 02511 | Concrete Sidewalks | |
| | Concrete Sidewalk | |
| 02513 | Asphalt Concrete Paving | As it applies to the work of this category. |
| | Piping General | |
| | Wates General | |
| | Water Distribution Systems | |
| | Water Service Connection | |
| | Sanitary Sewerage System | |
| | Storm Drainage Facilities | |
| | Exfiltration Trench Drains | |
| | Sedimentation & Erosion Control | |
| 02060 | Site Clearing and Finish | As it applies to the work of this category. |
| DIV. 1 | General Requirements | As it applies to the work of this category. |

The above divisions of the specifications are listed for the convenience of the Subcontractor. In some cases, the Subcontractor may be responsible for complying with Sections not listed above for the Subcontractor's convenience. The Subcontractor shall carefully examine all Sections of the Specifications and the complete set of drawings and be responsible for all work described in the SCOPE of WORK and required on the project, except where excluded in this work category, or specifically assigned by Scope of Work to other Subcontractors. This Subcontractor shall include all similar type work items that other work categories specifically listed as "Not Included" under the other Work Categories.



GULF/AIRSTEO, A/V
Subcontract Agreement

15 of 35

09/28/2009 04:16 PM

The work specifically includes but is not limited to:

1. Demolition and proper disposal of all underground utilities and associated structures as shown. Disconnection and capping of underground utilities is included in this scope.

2. Demolition, removal, and disposal of all water, sewer and the coordination of included and associated work with the City of Miramar and all other municipalities having jurisdiction. Provide schedule of all water and sewer line transfers to City of Miramar review and coordination.

3. All permits, inspection and scheduling coordination (transit), with all appropriate agencies having jurisdiction, related to the coordination. All performed within this scope.

4. All engineering (field and otherwise) and layout required, in conjunction with work performed within this scope. Include protection and control benchmarks and monuments.

5. Dust controls.

6. Establish and maintain temporary roads and site access as shown on Sheet FP-1 and site visitation plan.

7. All necessary safety and protective measures as relates to work performed (costing exposure to other project workers as well as the general public and the adjacent Middle School).

8. Washing of vehicles or any comparable measures to keep mud and dirt from the public streets. Provide cleaning of streets of all debris and mud as relates to work of this scope, including removal of sums (debris) from the site.

9. All necessary preventive measures for theft prevention relating to excavation and demolition. Instead, for inspecting same at all times.

10. Coordination for, and protection of, all existing structures and improvements, and performing the work within the general area.

11. Sidewalk Subcontractor will maintain positive drainage of the building pad at all times.

12. No burning of waste material will be allowed. Burning of trees and shrubs is only allowed if permit is obtained, and must comply with provisions.

13. Stripping stock-piling and re-spreading of topsoil including backfill of curbs, islands, and swale. Coordinate with Gulf/Atlantic's designation.

14. Excavate for Lake as indicated in the drawings, and maintenance during the construction phase of the project.

15. Tree protection requirements as shown and noted.

16. All coordination as required with local officials and municipalities for the procurement and setting of all required meters.

17. As-built drawings indicating all work performed.

18. Fire hydrants - new and relocated.

19. Site plumbing including all domestic water, storm sewer and sanitary sewer systems complete >5' outside of building (main).

20. Install and maintain all erosion control for phases in accordance with Drawings, specifications, related documents, and state and local requirements.

21. Tie connections required for complete.

22. Backfill, compaction, grading (in accordance with specifications) of islands and against curbs and gutters.

23. Precast and cast-in-place (brush, gravel, manhole covers, frames, tops, and trench drain structures as required for all structures not included in curb.

24. Coordination with all local officials and municipalities to perform work related to water and sewer connections, beyond that work which would be performed by all local officials and municipalities. See "exclusions" Item no. 1 below addressing this item.

25. Compliance with applicable General Notes as they appear on the drawings.

26. All swale blocks for work of this scope.

27. Provide grass (sod) including all manhole covers and accessories for a complete system.  Include Health Department.

28. Inspections and permits.

29. Trench drain where required.

30. Sub-lift from structure to Correspond locations. Pipe is to be stubbed up for future connection in curb connection. Developer provide supervision of connection by others.

31. Provide labor for complete clean-up crew at the use of 1 man-hour per 50 man-hours worked on-site. Corporate clean-up in addition to subcontractor's general and final cleanup. Construction Manager will specify times and provide supervision of corporate crew.

32. Install and maintain two construction entrances.

33. Provide grading necessary for any and all street improvement and new sidewalk and curbs.

34. State of Florida to building ribbon/sand including pipe, and tie into structure and tubing      for tie in connection to curb connection. To install sub-header from structure to Correspond locations. Pipe is to be stubbed up for future connection in storm drain. Developer provide supervision of connection by others.

35. Include furnishing and installing Correspond hook, concrete pad, and cleanout, and connecting to storm drain.

36. All subgrade will be laid as specified.

37. Detention pond and associated retaining pond one month prior to project completion to bring pond to new lake condition, including regressing and reworking of detention pond retaining pond including pipe, as Specified.

38. Reworking of detention pond to maintain growth of regrass.

39. Patching of roadway and repair of curbs cut under this subcontract is part of the work.

40. Dewatering as required to complete work.



GULF/ABETCO, A.JV
Subcontract Agreement

41. Work to begin no later than seven (7) days after issuance of notice to proceed.
42. Work scope includes Sewerage Lift Station complete.
43. Coordination with others to complete work as required by Gulfvarsteo.

The work specifically includes:
1. Payment for the water and sewer tap fees required (such will be by Construction Manager).
2. Site Lighting.
3. Roof downspouts and final connection.
4. Plumbing within building __

Unit Prices:
The following unit prices will be used to add or deduct work from this contract. All unit prices to be used based upon completed in place units. Unit prices include all cost associated with that work including supervision, labor, material, equipment, layout, insurance, fees, permits, bonds, and overhead and profit. Actual quantities to be determined by the Soils Engineer.

|  | Add or Deduct |
| --- | --- |
| -Remove unsuitable rock from site including off site disposal | $____/cy |
| -Providing of fill, compacted in place form on site source | $____/cy |
| -Providing of fill, compacted in place form off site source | $____/cy |
| -Providing of #57 stone -compacted in place | $____/cy |
| -Providing of crusher run compacted in place | $____/cy |
| -Mass rock excavation (blasting) with removal from site | $____/cy |
| -Mass rock excavation (blasting) with approved placement on site | $____/cy |
| -Rock excavation (rippable) with removal from site | $____/cy |
| -Rock excavation (rippable) with approved placement on site | $____/cy |
| -Trench rock excavation | $____/cy |
| -Trench rock excavation with approved placement on site | $____/cy |
| -Remove gravel from site - hourly rate - utilizing: | |
| -Loader | $____/hr |
| -Bobcat | $____/hr |
| -Dump truck | $____/hr |

17 of 35

GULFVARSTEO, A/V
Subcontract Agreement

09/28/2009 04:16 PM

**CATEGORY #2x**

**CURB / GUTTER AND PAVING**
**Curb, Gutter and Apron Construction; Pavement and Site Improvements**

**SCOPE of WORK:**

The above summary represents a narrative description only of the activities to be performed under this CATEGORY, which is referred to as "The Work" and further defined below.

Provide all labor, materials, equipment, layout and supervision necessary and incidental to complete, furnish and install "The Work". This includes all required clearance, permits, licenses, fees, taxes, bonds, storage facilities and all other incidentals for a completed installation. All work set out to the highest standards and in full compliance with all requirements of the contract documents listed in the index attached. The work will comply with all applicable local codes, regulations, and be in accordance with all safety and all specific Special Conditions listed. The work shall include, but not be limited to, the following:

| SPEC # | TITLE | COMMENTS |
|---|---|---|
| 0251 | Concrete Sidewalks | All applies to the work of this category |
| 02751 | Asphaltic Concrete Paving- General | All applies to the work of this category |
| Div. 1 | General Requirements | All applies to the work of this category |
|  | Site Cleanup and Finish |  |

The above divisions of the specifications are listed for the convenience of the Subcontractor. In some cases, this Subcontractor may be responsible for complying with Sections not listed above for the Subcontractor's convenience. The Subcontractor shall carefully examine all of the Specifications and the complete set of drawings and be responsible for all work described in the SCOPE of WORK and required on the project, except where excluded in this work category, or specifically assigned by Scope of Work to other subcontractors. This Subcontractor shall include all similar type work items that other work categories specifically failed as "Not Included" under the other work categories.

The work specifically includes but is not limited to:
1. All labor, engineering and layout associated with the performance of this work scope.
2. All striping, parking, directional signage required to be applied onto asphalt. All signage for traffic, pedestrian control – complete, as shown on the documents.
3. All traffic control/pedestrian control and protection as may be required in the course of performing this work.
4. Joint work, curing, treatment, weather protection, cleaning input and protection measures as specified or required.
5. Concrete sidewalk installation with sidewalk.
6. Concrete curb installation with sidewalk.
7. Aggregate base under bases of curbs, gutter and asphalt and concrete paving, compacted, proof rolled, and tested/inspected as need and specified. (as required)
8. All quality control measures associated with this work.
9. Cleanup, complete, of all debris and excess items associated with performance of this work scope including removal from points.
10. Responsible for any re-compaction of previously compacted subgrade under curb and gutter or paved areas, as may be required due to ...
11. Provide built-up curb ramping where extending two paved areas and coordinate curbs for sidewalk ramps.
12. Compliance with scope-applicable 'General Notes' as may appear on the drawings.
13. All concrete roadway entrance aprons including compacted limerock base.
14. Attention is drawn to the schedule, which require early placement of asphalt base. This implies a scheduled return to place the final asphalt course near the completion of the Project at a time to be designated by CM/Arketon's Superintendent. Include all associated cleanup when returning to complete.
15. Provide labor for composite cleanup crew at the rate of 1 man hour per 50 man - hours worked onsite. Composite cleanup is in addition to subcontractor's general and final cleanup. Construction Manager will specify times and provide supervision of composite crew.
16. Cast-in-place structure tops and lids/risers for structures located in curb.
17. Subgrade at curbs, will be under cut to meet subgrade by others. Backfill under curb is part of this work.
18. All barricades and safety protection necessary for the execution of work.
19. Provide Paving at Transit, Courts and Walkways as shown in the drawings.
20. Parking and roadway striping is part of this scope of work.

The work specifically excludes:
1. Not used
2. Rework of subgrade due to others, prior to acceptance of subgrade.
3. Concrete lock/rigid for site structures.
4. Testing.
5. Traffic signal upgrade work.

18 of 25

CJL/DANSTEO, A.IV
Subcontract Agreement

Initials ☐ ☐

## Unit Pricing

The following unit prices will be used to add or deduct work from the contract. All unit prices to be based upon completed in place units. The prices exclude all cost associated with the work including supervision, labor, material, equipment, layout, insurance, fees, permits, bonds, and overhead and profit. Actual quantities to be determined by the State Engineer.

Add or Deduct

| | |
|---|---|
| S.Y. of Right of Way Pavement, Including GAB | $_____ /sy |
| S.Y. of Heavy-Duty Pavement, Including GAB | $_____ /sy |
| S.Y. of Medium-Duty Pavement, Including GAB | $_____ /sy |
| S.Y. of Limerock (10") (Compacted in place) | $_____ /sy |
| S.Y. of Limerock (8") (Compacted in place) | $_____ /sy |
| S.Y. of Limerock (6") (Compacted in place) | $_____ /sy |
| S.Y. of Limerock (4") (Compacted in place) | $_____ /sy |
| Ton of crushed stone. (Compacted in place) | $_____ /tn |
| Removal of soft soils (from site, including excavation) | $_____ /cy |
| (Per C.Y. of excavation) | |
| Linear foot of curb and gutter. | $_____ /lf |

GULF/ARBSTCO, A/V
Subcontract Agreement

13 of 35

09/28/2009 04:16 PM

## CATEGORY #3a

### SITE CONCRETE WORK

Exterior sidewalks, concrete pads and ramps

**SCOPE of WORK:**

The above summary represents a narrative description only of the activities to be performed under this CATEGORY which is referred to as "The Work" and further defined below. Provide all labor, materials, equipment, layout and supervision necessary and incidental to completely furnish and install "The Work". This includes all required insurance, permits, licenses, fees, taxes, tools, storage facilities and all other incidentals for a completed installation. All work will be to the highest standards and in full compliance with all requirements of the contract documents listed in the index enclosed. The work will comply with all applicable local codes, regulations, and fall in accordance with all safety and job specific Special Conditions listed. The work shall include but not be limited to the following:

| SPEC. # | TITLE | COMMENTS |
|---|---|---|
| 16331 | Site Cleanup and Finish | All as applies to the work of this category. |
| 16331 | Cast-in-Place Architectural Concrete | All it applies to the work of this category. |
| 03300 | Cast-In-Place Concrete (Cv-fi) | All it applies to the work of this category. |
| 03300 | Concrete Finishes (Cv-fi) | All it applies to the work of this category. |
| ...... | Expansion Control | All it applies to the work of this category. |
| ...... | Sealants and Caulking | All it applies to the work of this category. |
| Div. 1 | General Requirements | All it applies to the work of this category. |

The above divisions of the specifications are listed for the convenience of the Subcontractor. In some cases, the Subcontractor may be responsible for complying with Sections not listed above for the Subcontractor's convenience. The Subcontractor shall carefully examine all Sections of the Specifications and the complete set of drawings and be responsible for all work described in the SCOPE of WORK and required on this project, except where excluded in this work category, or specifically assigned by Scope of Work to other subcontractors. This Subcontractor shall include all similar type work that other work packages specifically listed at "not included" under the other work categories.

The work specifically includes but is not limited to:

1. All sidewalks and concrete work outside of the building unless excluded below.
2. All lead engineering layout associated with this work scope.
3. All reinforcing bars and mesh contained within this work scope.
4. Expansion joint materials within or adjacent to concrete placed within this work scope.
5. Initial acceptance of subgrade prior to commencing. Responsible for any re-compaction of previously compacted subgrades as may be required due to weather or subcontractor work, including dewatering as needed.
6. Weather protection, other required protection from the elements.
7. Curing, cleanup, repairs and protection as specified. Surplus concrete and other debris created via this work scope will be removed from the site by this Subcontractor.
8. Handicapped ramp construction.
9. Make provision(s) for constructing concrete flagpole base – sleeve(s), other manufactured flagpole components provided by others.
10. Compliance with applicable General Notes as may appear on the drawings.
11. Place embedded items i.e. anchor bolts, to be encased in concrete.
12. All reinforcing and apply concrete sealers as specified (saw-cut joints do not require sealant).
13. Excavation and backfill as related to this work is included in this subcontract.
14. Process fill (gravel) under slabs, pavement, sidewalks and pads – as applicable.
15. Fine grading associated with this work scope.
16. Spreading of topsoil stemming from excavation with placement in accordance to Construction Manager's Superintendent.
17. Saw laws and sealants required between this work scope, and between this work scope and adjacent work, consistent with provisions and criteria of Sealants and Caulking manufacturer.
18. Site concrete pads, including pre-sloped drainage channel.
19. Provide separation control joints complete with accessories for slabs on grade.
20. Not used
21. Not used
22. Dumpster pad and concrete approach pad. Coordinate work with drain installation performed by Plumbing Subcontractor.
23. Generator Enclosure w/ footings and pad as shown (required).
24. Not used

29 of 35

GULF/AIRESTCO A/V
Subcontract Agreement

Initials

21 of 25

25. Not used
26. Concrete Pavers and benches as shown on the drawings. Provide shop drawings before the installation of concrete benches.
27. Provide labor for composite cleanup crew all flat rate of 1 man hour per 60 man hours worked onsite. Composite cleanup is in addition to subcontractor general and final cleanup. Construction manager will specify times and provide supervision of composite crew.
28. Barricades and safety precautions.
29. Setting/placement of pipe bollards – pipe material provided by others
30. Concrete footings and Patio at Bike Field.

UNIT PRICES

-Add sidewalk complete including subgrade preparation (per sf)

-Remove broken sidewalk from site and replace with new sidewalk (per sf)

Exhibit "B"

Contract Documents

Drawings By:  Schmeiske-Shishkin & Associates
             Kimley-Horn and Associates, Inc.

## Civil Construction Documents - November 27, 2006



| Sheet Number | Description | Sheet Issued Date / Revision Date | $1500 |
|---|---|---|---|
| EW-1 | Location Map | 3/06 | |
| EW-1 | Earthwork Plans | 3/7/06 | |
| EW-2 | Earthwork Cross Sections | 3/7/06 | |
| EW-3 | Earthwork Details | 3/7/06 | |
| | Earthwork Plan | 3/09 | |
| | Cover Sheet | 1/12/07 | |
| C1 | Master Site Plan | 11/22/06 | |
| C2 | Site Plan | 11/22/06 | |
| C3 | Site Plan | 11/22/06 | |
| C4 | Geometric Control Plan | 11/22/06 | |
| C5 | Geometric Control Plan | 11/22/06 | |
| C6 | Paving, Grading & Drainage Plan | 11/22/06 | |
| C7 | Paving, Grading & Drainage Plan | 11/22/06 | |
| C7-A | Plaza Grading & Entrance Enlargement Plan | 10/02/08 | |
| C8 | Water & Sewer Plan | 11/22/06 | |
| C9 | Water & Sewer Plan | 11/22/06 | |
| C10 | Pavement Marking & Signage Plan | 10/02/08 | |
| C11 | Paving & Grading Details | 10/02/08 | |
| C12 | Drainage Details | 10/02/08 | |
| SD001 | South Broward Drainage District-Standard Detail Sheet | 3/09 | |
| C13 | Water & Sewer Details | 10/23/06 | |
| C14 | Water & Sewer Details | 10/23/06 | |
| C15 | Water & Sewer Details | 10/23/06 | |
| C16 | Water & Sewer Details | 11/07/08 | |
| C17 | Basketball & Netball Court Details | 10/02/08 | |
| C18 | Softball Field Details | 10/02/08 | |
| C19 | Baseball & Training Details | 10/02/08 | |
| C20 | Miscellaneous | 10/02/08 | |
| C30 | Intersection | 10/02/08 | |
| C31 | Front Wall Details | 10/02/08 | |
| C32 | Central Structure Wall Details | 10/02/08 | |
| C33 | Playground Details | 10/02/08 | |
| C24 | Park Sign Details | 10/02/08 | |
| FP-1 | Fire Protection During Construction Plan | 10/02/08 | |
| FP-2 | Permanent Fire Protection Plan | 10/02/08 | |
| FP-2.1 | Permanent Fire Protection Details | 10/02/08 | |

GILFA/INSTECO. A/V
Subcontract Agreement

22 of 55



# PROJECT MANUAL
## CIVIL / STRUCTURAL SPECIFICATIONS
## TABLE OF CONTENTS

| SECTION | TITLE/DESCRIPTION |
|---|---|
| 01010 | Summary of Work |
| 01020 | Allowances |
| 01025 | Measurement & Payment (Not Included) |
| 01041 | Project Coordination |
| 01050 | Field Engineering |
| 01060 | Cutting & Patching |
| 01090 | Reference Standards |
| 01152 | Application of Payment |
| 01153 | Change Order Procedures |
| 01300 | Project Meetings |
| 01310 | Construction Schedules |
| 01340 | Shop Drawings, Product Data, & Services |
| 370 | Schedule of Values |
| 740 | Construction Photographs |
| 01410 | Testing Laboratory Services |
| 01500 | Construction Facilities & Temporary Controls |
| 01530 | Barriers |
| 01570 | Traffic Control |
| 01600 | Material & Equipment |
| 01630 | Substitutions & Product Options |
| 01700 | Contract Closeout |
| 01720 | Project Record Documents |
| 02211 | Testing Piping Systems |
| 02280 | Site Grading |
| 02360 | Trenching, Backfilling & Compacting |
| 03300 | Finish Grading |
| 03313 | Soil Treatment |
| 08800 | Cast-in-place Concrete |
| 09900 | Aluminum Grades |
| | Asphalt Concrete Paving |
| | Painting |

GULI/ARISTEO, A./V
Subcontract Agreement

23 of 26

GULF/AMSTECO A/V
Subcontract Agreement

PROJECT SCHEDULE

Exhibit "C"



Exhibit "D"

Monthly Requisition Forms
Requisition No. _____

Subcontractor: _____
Address: _____
Phone: _____

To:   Gulfstream, A/V In assoc w/D. Stephenson
      800 Corporate Drive, Suite 600
      Ft. Lauderdale, FL 33334
      (954) 492-9191

Date: _____

Project Name: _____

This Request for Payment is for work performed on the above project through the pay period ending _____
ORIGINAL CONTRACT AMOUNT:                                         $ _____
          ~ved Change Orders:                                    $ _____

TOTAL REVISED CONTRACT:                                          $ _____

BREAKDOWN OF BILLING TO DATE

Value of Work Performed to Date:                                 $ _____
(See Breakdown Attached)
Value of Material Stored on Site:                                $ _____

                                            SUBTOTAL             $ _____

Less _____ % Retainage:                                        $ _____

Amount Earned to Date:                                           $ _____

Less Previous Payments (Request):                                $ _____

AMOUNT OF THIS REQUEST NO. ___:                                  $ _____  (A)

BREAKDOWN OF BILLING THIS PERIOD ONLY

Value of Work Performed this Month:                              $ _____
Material Stored on Site this Month:                              $ _____
(not previously billed)

                                            SUBTOTAL             $ _____

Less _____ % Retainage:                                        $ _____
(this month only)

AMOUNT OF THIS REQUEST NO. ___:                                  $ _____

Requisition must be submitted by the 20th of the Month and can include work through the 25th of this Month. Please be sure to include Partial Lien
Release for amount of this Pay Request along with any required Material Supplier Releases of Lien.

Subcontractor: _____

Representative Name: _____                State of: _____  County: _____

Representative Signature: _____           Subscribed and sworn to before me this _____ day of _____

Date: _____                               Notary Public: _____

                                            My Commission expires: _____

25 of 25                                    GULFSTREAM/D. A/V
                                            Subcontract Agreement

Gulf/Aristeo, AJV in assoc w/D. Stephenson
SUBCONTRACTOR REQUISITION BREAKDOWN

SUBCONTRACTOR: _____
PROJECT: _____



| A ITEM NO. | B DESCRIPTION OF WORK | | C SCHEDULED VALUE | D WORK COMPLETED | | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | | M | | | | | | | | |
| | | L | | | | | | | | |
| | PAGE TOTAL: | | | | | | | | | |
| | TOTAL | | $0.00 | | | | | | | |

Exhibit "D"
Schedule of Values

Page 7 of 2

GULF/ARISTEO, AJV
Subcontract Agreement

26 of 35

Exhibit "E"

**GULF/MISTED, A/V**

**SUBCONTRACTOR PARTIAL WAIVER AND RELEASE OF LIEN**

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, _____
(Subcontractor Name/Address), in consideration of partial payment by GULF/MISTED, A/V in the sum of $ _____ receipt
whereof is hereby acknowledged, and other valuable considerations and benefits to the undersigned accruing, do hereby release and
quitclaim all liens, lien rights, claims or demands of every kind whatsoever which the undersigned now has, or may hereafter have,
against certain real estate and the improvements thereon, situated in Miramar, Florida and legally described as Arsht Sports
Complex, on account of work and labor performed, and/or materials furnished by it, in, or about the construction of any buildings or
buildings situated thereon, or in improving said property above described, or any part thereof.

It being the understanding of the undersigned that this is a PARTIAL WAIVER AND RELEASE OF LIEN which the undersigned has
signed, the premises described herein, for all goods and services furnished and work done up to _____ (Date). The
designated further states, represents, and warrants that no assignment of said lien or claims, nor the right to perfect a lien against
said real estate has been or will be made, and that all subcontractors of undersigned, laborers employed by the undersigned, and all
materials and supplies furnished by others to the undersigned, in connection with the construction of improvements upon the aforesaid
premises, less any applicable retention, have been fully paid.

The undersigned further certifies to have complied with all Federal, State and local tax laws, including, but not limited to, Social Security
laws, unemployment compensation and workers' compensation laws insofar as applicable to the performance of the Contract.

IN WITNESS WHEREOF I/WE HAVE EXECUTED THIS INSTRUMENT UNDER SEAL this _____ day of
_____, 200__.

_____
(Company Name)

_____                   _____
(Signature)                                                                      (Witness)

_____                   _____
(Print Name & Title)                                                        (Witness)

SUBSCRIBED BEFORE ME this _____ day of _____, 200__.

_____
(Notary Public)

My Commission Expires: _____

Exhibit "E"
GULF/ARISTEO, A/IV

UNCONDITIONAL WAIVER AND RELEASE UPON FINAL PAYMENT

STATE OF FLORIDA
COUNTY OF BROWARD

The undersigned mechanic and/or materialman has been employed by _____ (name of contractor) to furnish _____ (describe materials and/or labor) for the construction of improvements known as Adam Sports Complex which is located in Miramar, Florida, and is owned by City of Miramar, and more particularly described as follows: All real property and improvements located at 10801 Miramar Boulevard. Upon the receipt of the sum of $_____ the mechanic and/or materialman waives and releases any and all liens or claims of liens on any right against any labor and/or material bond it has upon the foregoing described property.

Given under hand and seal this _____ day of _____ , 200___.

_____
Company Name

_____(Seal)          _____
Signature                         Witness

_____
Print Name and Title

Sworn to and subscribed before me

this _____ day of _____ , 2000___.

_____
Notary Public

NOTICE: THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT YET BEEN PAID, USE A CONDITIONAL RELEASE FORM

29 of 35

GULF/ARISTEO, A/V
Subcontract Agreement

Inats

Exhibit "E"

- SAMPLE -

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURED**
XYZ Contractor
450 Main Street
Atlanta, GA 30367

**PRODUCER**
Gulf/Action, A Joint Venture
600 Corporate Drive
Suite 600
Fort Lauderdale, FL 33313

COMPANIES AFFORDING COVERAGE

| | | | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS |
|---|---|---|---|---|---|---|---|

Project: Axsis Sports Complex, The City of Miramar, and Gulf/Action, A Joint Venture are named as Additional Insured.

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

Gulf/Action, A/V
Subcontract Agreement

Exhibit "G"

ASBESTOS STATEMENT

(Company Letterhead)
ANSIN SPORTS COMPLEX

Date

DILL FARISTEO, AIV
900 Corporate Drive
Suite 500
Ft Lauderdale, Florida 33334

Ansin Sports Complex
Compliance with Contract Documents/Asbestos Statement

Gentlemen:

_____ Contractor _____, certifies through its employees and subcontractor, that we reviewed the requirements of the Contract Documents and inspected the Work for compliance with all requirements of the Contract Documents. The contractor further certifies and represents that all equipment and systems have been installed in accordance with specification requirements and are operational. The Contractor certifies and represents that the Work is complete in all respects and is ready for final inspection. Furthermore, none of the materials incorporated in the project contain asbestos.

Contractor

Signed: _____

Print: _____

Date: _____

State of _____ County of _____

Subscribed and sworn to before me this _____ day of _____, 2000

Notary Public _____

y Commission expires: _____

(Seal)

30 of 35

DILL FARISTEO, AIV
Subcontract Agreement

Exhibit "H"

(Company Letterhead)
**CONTRACTOR WARRANTY FORM**

**PROJECT:** ANSIN SPORTS COMPLEX

**LOCATION:** MIRAMAR, FLORIDA

**OWNER:** CITY OF MIRAMAR

**CONSTRUCTION MANAGER:** GUI.F/ARSITEO, A/V

We, _____, Contractor

(Company Name)

for _____ as described

(Lat Trade)

in Specification Section (s) _____

_____
[Last appropriate sections of Specification]

do hereby warrant that all labor and materials furnished and work performed in conjunction with the above-referenced project are in
accord with the Contract Documents and authorized modifications thereto, and will be free from defects due to defective materials or
workmanship for a period of _____ year(s) from Date of Substantial Completion. This warranty commences on

_____
(Date of Substantial Completion affixed by Architect)

and expires on _____

Should defects develop during the warranty period due to improper materials, workmanship or arrangement, the same, including
adjacent work disposed, shall be made good by the undersigned at no expense to the Owner.

GULF/ARSITEO, A/V will give Contractor written notice of defective work. Should Contractor fail to correct defective work within 60
days after receiving written notice, the Owner may, at his option, correct defects and charge Installer costs for such correction.
Contractor agrees to pay such charges upon demand.

Nothing in the above shall be deemed to apply to work which has been abused or neglected by the Owner.

FOR _____     FOR _____

GULF/ARSITEO, A/V                              (Contractor Company Name)

BY _____      BY _____

TITLE _____      TITLE _____

DATE _____      DATE _____

GULF/ARSITECO, A.IV
Subcontract Agreement

32 of 35

City of Miramar Material Checklist

Exhibit "I"

GULF/NESTEG, A/V
Subcontract Agreement



Exhibit "J"

City of Miramar Final Survey Requirements

34 of 25

City of Miramar Final Engineering Checklist

Exhibit "K"

OIL/FAIRSTED A.IV
Subcontract Agreement

GULFWEST EQ, & AV
Subordinated Agreement

Direct Owner Purchase Procedures

Exhibit "L"



# COMMON POLICY DECLARATIONS

$CA2$

## AMERISURE MUTUAL
## INSURANCE COMPANY

SERVICE OFFICES:

FIRST YEAR:          2007

**POLICY NUMBER:**          GL 2043449000000
GROUP NUMBER :
ACCOUNT NUMBER: 20028665

**PREMIUM AMOUNT DUE:** $      47,643.56

RENEWAL OF:

**NAMED INSURED:** GULF/ARISTEO, JOINT VENTURE

**MAILING ADDRESS:**
C/O GULF BUILDING CORPORATION
600 CORPORATE CENTER DRIVE
FT. LAUDERDALE          FL 33334

PRODUCER NUMBER:   826368 – 150
PRODUCER NAME AND ADDRESS:
BATEMAN GORDON & SANDS INC

P O BOX 1270

POMPANO BEACH          FL  33061

**POLICY PERIOD:**  FROM 03/01/2007 TO 03/01/2008     AT 12:01 A.M. STANDARD TIME
AT YOUR MAILING ADDRESS SHOWN ABOVE  DATE ISSUED:  03/21/2007

NAMED INSURED'S BUSINESS:  GENERAL CONTRACTOR
FORM OF BUSINESS:   CORPORATION
AUDIT PERIOD:    ANNUAL

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THE
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | | PREMIUM |
|---|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ | 0.00 |
| COMMERCIAL AUTO COVERAGE PART | $ | 0.00 |
| COMMERCIAL CRIME COVERAGE PART | $ | 0.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ | 46,256.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ | 0.00 |
| COMMERCIAL PROPERTY COVERAGE PART | $ | 0.00 |
| STATE TAX | $ | |
| MUNICIPAL SURCHARGE | $ | |
| NEW YORK FIRE FEE | $ | |
| FLORIDA - CITIZENS PROPERTY INSURANCE SURCHARGE 2004 | $ | |
| FL HURRICANE CATASTROPHE FUND EMERGENCY ASSESSMENT | $ | 462.56 |
| FL INSURANCE GUARANTY ASSOCIATION ASSESSMENT 2006 | $ | 925.00 |
| **TOTAL** | $ | 47,643.56 |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

"THIS IS A TRUE AND EXACT
DUPLICATE OF THE ORIGINAL"

COUNTERSIGNED _____ (DATE)          BY          0200 29332700

                                                                    (AUTHORIZED REPRESENTATIVE)

DUPLICATE

**Amerisure**
COMPANIES

EXHIBIT
B

09/28/2009 04:19 PM



**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS PAGE**

**POLICY NUMBER:** GL 2043449000000      **EFFECTIVE DATE:** 03/01/2007

---

**NAMED INSURED**

GULF/ARISTEO, JOINT VENTURE

---

**LIMITS OF INSURANCE**

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | 2,000,000 |
| (OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | 2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | 1,000,000 |
| EACH OCCURRENCE LIMIT | 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | 50,000 |
| MEDICAL EXPENSE LIMIT | 5,000 ANY ONE PERSON |

---

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY**

FOR DESCRIPTIONS OF THE INSURED PREMISES, PLEASE REFER TO THE ATTACHED SCHEDULES.

---

**CLASSIFICATIONS**

ALL APPLICABLE CLASSIFICATIONS MAY BE FOUND IN THE ATTACHED SCHEDULES.

---

**FORMS APPLICABLE**

| | | | |
|---|---|---|---|
| AN 12 20 04 06 | CG 21 70 11 02 | CG 22 34 07 98 | CG 22 79 07 98 |
| CG 71 06 10 99 | CG 22 94 10 01 | CG 21 86 12 04 | CG 03 00 01 96 |
| CG 70 42 04 03 | IL 00 21 07 02 | CG 21 60 09 98 | CG 70 71 09 99 |
| M 10 85 06 00 | IL 70 27 07 01 | IL 70 39 01 06 | CG 00 01 12 04 |
| CG 02 20 11 06 | CG 21 47 07 98 | M 10 74 01 93 | IL 00 17 11 98 |
| CG 71 03 01 06 | CG 04 37 12 04 | CG 00 67 03 05 | CG 71 34 04 05 |
| CG 20 10 07 04 | | | |

WCFM36

PAGE    1

COMMERCIAL GENERAL LIABILITY
SCHEDULE OF COVERED PREMISES

POLICY NUMBER                          NAMED INSURED

GL 2043449000000               GULF/ARISTEO, JOINT VENTURE

PREM NO   BLDG NO   LOCATION
00001      001      2200 CIVIC CENTER PLACE
                    MIRAMAR              FL  33025

    CLASSIFICATION
        CODE       DESCRIPTION
        91580      CONTRACTORS - EXECUTIVE SUPERVISORS OR
                   EXECUTIVE SUPERINTENDENTS - INCLUDING
                   PRODUCTS AND COMPLETED OPERATIONS

    EXPOSURE        PREMIUM
     BASE            BASIS        EXPOSURE
    PAYROLL         PER 1000       250,000

                                 RATE          PREMIUM
    PREMISES/OPERATIONS          92.192        23,048.00

    CLASSIFICATION
        CODE       DESCRIPTION
        91585      CONTRACTORS-SUBCONTRACTED WORK-IN
                   CONNECTION WITH CONSTRUCTION,
                   RECONSTRUCTION, REPAIR OR ERECTION
                   OF BUILDINGS  NOC

    EXPOSURE        PREMIUM
     BASE            BASIS        EXPOSURE
    TOTAL COST      PER 1000      7,000,000

                                 RATE          PREMIUM
    PREMISES/OPERATIONS          0.992          6,944.00
    PROD/COMPLETED OPS           2.302         16,114.00

    CLASSIFICATION
        CODE       DESCRIPTION
        49950      ADDITIONAL INTERESTS

                                                PREMIUM
    PREMISES/OPERATIONS          0.000           150.00

              SUBLINE 334 MINIMUM PREMIUM        380.00

              SUBLINE 336 MINIMUM PREMIUM        339.00

--------------------------------------------------------------
--------------------------------------------------------------

COMMERCIAL GENERAL LIABILITY
SCHEDULE OF COVERED PREMISES

POLICY NUMBER                          NAMED INSURED

GL 2043449000000                     GULF/ARISTEO, JOINT VENTURE

---

TOTAL COVERAGE PART PREMIUM            $    46,256.00

# QUICK REFERENCE
## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (CG 00 01), Common Policy Conditions and Endorsements, if applicable. Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

### DECLARATIONS

Named Insured and Mailing Address
Policy Period
Description of Business and Location of Premises
Limits of Insurance
Forms and Endorsements applying to the Coverage Part at time of issue

### COVERAGE FORM (CG 00 01)

SECTION I - COVERAGES

Coverage A - Bodily Injury and Property Damage Liability
    Insuring Agreement
    Exclusions
Coverage B - Personal and Advertising Injury Liability
    Insuring Agreement
    Exclusions
Coverage C - Medical Payments
    Insuring Agreement
    Exclusions
Supplementary Payments

SECTION II - WHO IS AN INSURED

SECTION III - LIMITS OF INSURANCE

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

Bankruptcy
Duties in the Event of Occurrence, Claim of Suit
Legal Action Against Us
Other Insurance
Premium Audit
Representations
Separation of Insureds
Transfer of Rights of Recovery Against Others to Us

SECTION V - DEFINITIONS

### COMMON POLICY CONDITIONS (Il 00 17)

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

### ENDORSEMENTS (If Any)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986

M 10 74 01 93

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

CG 00 01 12 04

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003   CG 00 01 12 04   □

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

© ISO Properties, Inc., 2003

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003          CG 00 01 12 04     □

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

#### b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

              © ISO Properties, Inc., 2003                       □

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

CG 00 01 12 04                    © ISO Properties, Inc., 2003                    Page 15 of 15                ☐

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Hart Forms & Services
Reorder No. 14-82234

Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

CG 00 67 03 05 © ISO Properties, Inc., 2004 Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 02 20 11 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A.** Paragraph 2. of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph 2.b.

**B.** Paragraph 5. of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro. rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect. The cancellation will be effective even if we have not made or offered a refund.

CG 02 20 11 06                © ISO Properties, Inc., 2006                **Page 1 of 2**    ☐

C. The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Page 2 of 2                    © ISO Properties, Inc., 2006                    CG 02 20 11 06    ☐

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 04 37 12 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ELECTRONIC DATA LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| Loss Of Electronic Data Limit: | $ |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Exclusion 2.p. of **Coverage A – Bodily Injury And Property Damage Liability** in **Section I – Coverages** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data" that does not result from physical injury to tangible property.

**B.** The following paragraph is added to **Section III – Limits Of Insurance:**

Subject to **5.** above, the Loss of Electronic Data Limit shown in the Schedule above is the most we will pay under Coverage **A** for "property damage" because of all loss of "electronic data" arising out of any one "occurrence".

**C.** The following definition is added to the **Definitions** Section:

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**D.** For the purposes of the coverage provided by this endorsement, the definition of "Property Damage" in the **Definitions** Section is replaced by the following:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

**c.** Loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate "electronic data", resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 60 09 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

(1) Any of the following, whether belonging to any insured or to others:

(a) Computer hardware, including microprocessors;

(b) Computer application software;

(c) Computer operating systems and related software;

(d) Computer networks;

(e) Microprocessors (computer chips) not part of any computer system; or

(f) Any other computerized or electronic equipment or components; or

(2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

COMMERCIAL GENERAL LIABILITY
CG 21 70 11 02

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

CG 21 70 11 02                © ISO Properties, Inc., 2002                Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003           Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 22 34 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

CG 22 34 07 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

CG 22 79 07 98           Copyright, Insurance Services Office, Inc., 1997           **Page 1 of 1**           □

COMMERCIAL GENERAL LIABILITY
CG 22 94 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of **Section 1 – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

© ISO Properties, Inc., 2000   **Page 1 of 1**   ▢

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

This insurance does not apply to:

**ASBESTOS**

"Bodily Injury" or "Personal and Advertising Injury" or "Property Damage" arising out of:

**(1)**   The removal, replacement, repair, enclosure or encapsulation of asbestos from any building or structure;

**(2)**   The use, manufacture, transportation, removal, storage or disposal of asbestos or any substance, goods, products or structures containing asbestos; or

**(3)**   The inhalation, ingestion or absorption of asbestos by any person, including any prolonged or repeated exposure to asbestos.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2002

CG 70 42 04 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCESS INSURANCE CONDITION - WHEN YOU ARE AN INSURED ON OTHER INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

Paragraph **4.b.** of the Other Insurance Condition - (Section IV - Commercial General Liability Conditions) is deleted and replaced by the following:

**4.    Other Insurance**

    **b.    Excess Insurance**

       This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

       **(1)**  That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

       **(2)**  That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

       **(3)**  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

       **(4)**  If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability; or

       **(5)**  That is valid and collectible insurance available to you as an insured under any other policy.

       When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

       When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

       **(1)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

       **(2)**  The total of all deductible and self-insured amounts under all that other insurance.

       We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1997

CG 70 71 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION, HOSTILE FIRE EXCEPTION, AND CONTRACTOR JOB SITE EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

Exclusion f. under Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

(1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a)  "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(b)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i)   At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii)  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(c)  "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Insurance Services Office, Inc., 2004

CG 71 03 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMMERCIAL
# GENERAL LIABILITY CONDITIONS
# NOTICE AND TENDER TO OTHER INSURERS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following is added to paragraph **2.c.** of **Duties In The Event Of Occurrence, Offense, Claim Or Suit:**

(5)  Promptly give notice of an "occurrence" or offense which may result in a claim, a claim which is made or "suit" to any other insurer which has available insurance for a loss we cover under **Coverages A** or **B** of this coverage part.

(6)  Promptly tender the defense of any claim made or "suit" to any other insurer which also has available insurance for a loss which we cover under **Coverage A** or **B** of this coverage part.

CG 71 06 10 99                    Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BODILY INJURY DEFINITION MODIFICATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**All other terms, provisions, exclusions, and limitations of the policy apply except as specifically stated below.**

**SECTION V - DEFINITIONS**, Item 3. "Bodily injury" is deleted and replaced with the following:

3.    "Bodily injury"

    a.    Means physical:

        (1)   Injury;
        (2)   Disability;
        (3)   Sickness; or
        (4)   Disease;

    sustained by a person, including death resulting from any of these at any time.

    b.    Includes mental:

        (5)   Anguish;
        (6)   Injury;
        (7)   Humiliation;
        (8)   Fright; or
        (9)   Shock;

    sustained by a person who has sustained any "bodily injury" described in paragraph **3.a.**, provided that any "bodily injury" described in paragraph **3.b.** results directly from any "bodily injury" described in paragraph **3.a.**

    c.    All "bodily injury" described in paragraph **3.b.** shall be deemed to have occurred at the time the "bodily injury" described in paragraph **3.a.** occurred.

**CG 71 34 04 05**

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**IL 00 21 07 02**                    © ISO Properties, Inc., 2001                    **Page 1 of 2**    ☐

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

   © ISO Properties, Inc., 2001   IL 00 21 07 02   □

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIVACY PROTECTION CONDITION

This endorsement modifies the following:

**COMMON POLICY CONDITIONS**

The **COMMON POLICY CONDITIONS** is modified to include the following additional Condition:

**Privacy Protection**

a.   This policy provides that you will report claims to us as soon as practicable and will cooperate with us in the investigation and settlement of claims.  To enable you to assist us in the claim handling process we, or our independent agent, may share certain information with you.  This information may be Confidential Information. Confidential Information means non-public personal information.  This information will be shared solely for the purpose of helping to effect, administer or enforce rights and benefits payable or recoverable under this policy.

b.   You agree to use such Confidential Information solely to perform the services and obligations required under this policy.  You will not use Confidential Information for any other purpose.  You will use information shared to:

    (1)   work with us to develop settlement or litigation strategies on your behalf.

    (2)   detect and investigate any suspected fraud.

    (3)   support our safety, loss prevention, and case management programs.  Case management includes utilization review, disability management, return to work, and light duty programs.

    (4)   check your premium charges and billings for accuracy.

    (5)   monitor our claim handling practices for quality assurance, quality improvement and performance evaluation purposes.

    (6)   report to us any information that may contribute to the fair and final resolution of all claims.

You specifically agree not to use any Confidential Information to market your products or services.  You will also not use Confidential Information to make personnel or employment related decisions.

c.   You agree to protect the privacy of Confidential Information.  You will not share Confidential Information, either directly or indirectly with any third party, except as may be allowed by law.  You will share Confidential Information only with your employees who have a need for such information to perform their duties under this policy.  If you need to disclose any Confidential Information to a third party in order to perform your duties under this policy, you will first get our written consent.  You will then enter into a confidentiality agreement with such third party.  Under that confidentiality agreement such third party must be restricted from disclosing, using or copying Confidential Information, except as consistent with this policy.

Nothing in this endorsement shall affect the coverage provided by this policy.  Provided, however, if permitted by law, we may cancel your policy in the event you use or disclose Confidential Information other than as provided in this endorsement or permitted by law.

**IL 70 27 07 01**

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is already included in your current policy.  Under your existing coverage, any losses resulting from certified acts of terrorism would be partially reimbursed by the United States government under a formula established by the Terrorism Risk Insurance Act, as extended on December 22, 2005.

Under this formula, the United States government generally pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible paid by Amerisure.

Amerisure does not charge additional premium for this coverage.  Furthermore, your annual premium does not include any charges for the portion of losses covered by the United States government under the Act.

Name of Insurer: _____

Policy Number: _____

IL 70 39 01 06

# 2005 GENERAL LIABILITY
# FORMS REVISION
# ADVISORY NOTICE TO POLICYHOLDERS

This is a summary of the major changes to your policy.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy or endorsements.  You should read your policy and review your declaration page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THIS POLICY SHALL PREVAIL.**

The areas within the policy that broaden, reduce or clarify coverage are highlighted below. This notice does not reference every editorial change made in your policy.

## COVERAGE FORM CHANGES

### *BROADENINGS IN COVERAGE*

#### POLLUTION EXCLUSION:

- CG 71 03 01 06 - Total Pollution Exclusion With a Building Heating Equipment Exception, Hostile Fire Exception and Contractor Job Site Exception  (revision of CG 71 03 03 04)
- CG 71 30 01 06 - Total Pollution Exception With A Building Heating Equipment Exception, Hostile Fire Exception and Contractor Job Site Exception  (revision of CG 71 30 03 04)

The exception to the Pollution Exclusion which provides coverage for bodily injury arising out of smoke, fumes, vapors or soot from building heating equipment has been expanded to also include water heaters and cooling and dehumidifying equipment.

### *CLARIFICATIONS OR NO IMPACT IN COVERAGE*

#### ELECTRONIC DATA:

- CG 70 70 09 05 - Advantage General Liability Extension (revision of CG 70 70 01 04)
- CG 70 49 09 05 - Contractors General Liability Extension (revision of CG 70 49 03 04)
- CG 70 88 10 05 - Texas Advantage General Liability Extension (revision of CG 70 88 01 04)
- CG 70 63 10 05 - Texas Contractors General Liability Extension (revision of CG 70 63 03 0

A minor clarification change was made on the form.

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission. Insurance Services Office, Inc. 2004,

AN 12 20 04 06

Page 1 of 2

## *REDUCTIONS IN COVERAGE*

### REVISED MOBILE EQUIPMENT

- CG 70 70 09 05 – Advantage General Liability Extension (revision of CG 70 70 01 04)
- CG 70 49 09 05 – Contractors General Liability Extension  (revision of CG 70 49 03 04)
- CG 70 88 10 05 – Texas Advantage General Liability Extension (revision of CG 70 88 01 04)
- CG 70 63 10 05 – Texas Contractors General Liability Extension  (revision of CG 70 63 03 04)

The definitions of "mobile equipment" and "auto" have been revised. Any land vehicle that had been classified as a piece of mobile equipment under your previous policy, will now be considered an auto if that vehicle is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.  With this change, coverage is no longer provided for these types of land vehicles since they are now defined to be autos rather than mobile equipment and subject to the Aircraft, Auto and Water-craft exclusion in your policy.  However, the operation of machinery or equipment that is attached to, or part of, such a vehicle will still be covered by your policy.

If you wish to obtain coverage for land vehicles subject to compulsory or financial responsibility laws or other motor vehicle insurance laws, you should consider a Commercial Automobile policy.

### OTHER INSURANCE

- CG 70 14 08 05 – Manufacturers Processors Specifications Expense Coverage  (revision of CG 70 14 04 02) Except Alabama and Texas (CG 70 14 04 98)
- CG 70 15 08 05 – Product Recall Coverage Endorsement  (revision of CG 70 15 04 02)
- CG 70 30 08 05 – Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 30 04 02)
- CG 70 45 08 05 – Texas Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 45 01 04)
- CG 70 76 08 05 – Kansas Product Recall Coverage  (revision of CG 70 76 01 04)
- CG 70 77 08 05 – Tennessee Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 77 01 04)
- CG 71 05 08 05 – Mississippi Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 71 05 01 04)
- CG 71 27 08 05 – Alabama Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 27 01 04)

The above changes were made for clarification and to remove any ambiguities in the coverage forms.

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission. Insurance Services Office, Inc., 2004

AN 12 20 04 06

POLICY NUMBER: GL 2043449

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| CITY OF MIRAMAR 2300 CIVIC CENTER PLACE MIRAMAR, FL 33025 | 220 CIVIC CENTER PLACE MIRAMAR, FL 33025 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  1. Your acts or omissions; or

  2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

  1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

  2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04

Copyright, ISO Properties, Inc., 2004

Page 1 of 1
UNIFORM

POLICY NUMBER: GL 2043449

**COMMERCIAL GENERAL LIABILITY**
CG 20 10 07 04

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| BROWARD COUNTY BOARD OF COMMISSIONERS; RISK MGMT. 115 SOUTH ANDREWS AVENUE, ROOM 210 FT. LAUDERDALE, FL 33301 | 220 CIVIC CENTER PLACE MIRAMAR, FL 33025 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    **1.** Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

    **1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    **2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

POLICY NUMBER: GL 2043449

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
| --- | --- | --- |
| | PER CLAIM  or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $1,000 |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

　**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

　**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

　**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

　　**(1)** "Bodily injury";

　　**(2)** "Property damage"; or

　　**(3)** "Bodily injury" and "property damage" combined

　as the result of any one "occurrence".

　If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

　With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

     Copyright, Insurance Services Office, Inc., 1994     CG 03 00 01 96     ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

Policy Change Number 1

| POLICY NUMBER<br>GL 2043449000000 | POLICY CHANGES EFFECTIVE<br>9-30-2007 | COMPANY<br>AMERISURE MUTUAL INSURANCE |
|---|---|---|

| Direct Bill No:<br><br>Account No: 20028665 | POLICY PERIOD<br>From 3-1-2007          To 3-1-2008 |
|---|---|
| NAMED INSURED<br><br>GULF/ARISTEO, JOINT VENTURE<br>C/O GULF BUILDING CORPORATION<br>600 CORPORATE CENTER DRIVE<br>FT. LAUDERDALE, FL 33334 | AUTHORIZED REPRESENTATIVE<br>BATEMAN GORDON & SANDS, INC.<br>POMPANO BEACH, FL<br><br><br>PRODUCER CODE: 826368-150 |

**COVERAGE PARTS AFFECTED**

ENTIRE

**CHANGES**

MAILING ADDRESS IS CHANGED TO:

633 S. FEDERAL HIGHWAY
SUITE 500
FT. LAUDERDALE, FL 33301

Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

A-3188 (12-88)

# AMERISURE MUTUAL INSURANCE COMPANY

**26777 Halsted Road, Farmington Hills, MI 48331-3586**
**Phone 1-800-257-1900**

## ASSIGNMENT

Assignment of this policy is valid only with the written consent of this Company.

## POLICY CONTENT

This policy is made and accepted subject to the foregoing provisions and stipulations and those which follow. These provisions, in addition to those added by amendment or endorsement are a part of this policy.

This policy consists of the Common Policy Declarations, Coverage Parts and endorsements listed in that Declarations form. In return for the payment of the premium, the Company agrees with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy.

## MUTUAL POLICY CONDITIONS

This policy is non-assessable. You are a member of the Company. Members participate in the distribution of dividends to the extent and upon the conditions fixed and determined by the Board of Directors. Such distribution will be made in accordance with the law.

**IN WITNESS WHEREOF,** the Company has executed and attested to these provisions. This policy is not valid unless countersigned on the Declarations page by our authorized representative.

---

The insured is notified that by virtue of this policy, he/she is a member of the Amerisure Mutual Insurance Company of Farmington Hills, Michigan. Members are entitled to vote either in person or by proxy at Company meetings. Annual meetings are held on the second Thursday of May of each year at 10:30 A.M. at the Home Office in Farmington Hills, MI or at such other place in the City of Farmington Hills, to which the members may adjourn such meeting.

---

_Susan Dailey Vincent_
Secretary

_[signature]_
President

M 10 85 06 00

GENERAL LIABILITY

INSURING COMPANY                POLICY NUMBER     GL 2043449000000

AMERISURE MUTUAL

| NAMED INSURED | PRODUCER 826368 |
|---|---|
| GULF/ARISTEO, JOINT VENTURE | BATEMAN GORDON & SANDS INC |
| C/O GULF BUILDING CORPORATION | P O BOX 1270 |
| 600 CORPORATE CENTER DRIVE | POMPANO BEACH     FL   33061 |
| FT. LAUDERDALE    FL  33334 | |
| TERM EFF DATE   03/01/2007 | TERM EXP DATE   03/01/2008 |

| FORM NUMBER | FORM NAME | FILL IN (R/O/N) |
|---|---|---|
| AN 12 20 04 06 | ADVISORY NOTICE TO POLICYHOLDERS (05) | N |
| CG 21 70 11 02 | CAP ON LOSS/CERT ACT OF TERRORISM | N |
| CG 22 34 07 98 | EXCL-CONSTRUCTION MANAGEMENT E & O | N |
| CG 22 79 07 98 | EXCL-CONTRACTORS-PROF. LIABILITY | N |
| CG 71 06 10 99 | NOTICE AND TENDER | N |
| CG 22 94 10 01 | EXCL-DMG TO WORK PERF BY SUBCONTRACTOR | N |
| CG 21 86 12 04 | EXCL - EXTERIOR INSULATION/FINISH | N |
| CG 03 00 01 96 | DEDUCTIBLE LIABILITY INS. | R |
| CG 70 42 04 03 | ASBESTOS EXCLUSION ENDORSEMENT | N |
| IL 00 21 07 02 | NUCLEAR ENERGY LIAB EXCL (BROAD FORM) | N |
| CG 21 60 09 98 | EXCL YEAR 2000 COMPUTER RELATED | N |
| CG 70 71 09 99 | EXCESS INSURANCE CONDITION | N |
| M 10 85 06 00 | AMERISURE MUTUAL JACKET ENDT | N |
| IL 70 27 07 01 | PRIVACY PROTECTION CONDITION | N |
| IL 70 39 01 06 | POLICYHOLDER DISCLOSURE NOTICE/TERRORISM | N |
| CG 00 01 12 04 | COMM'L. GEN'L LIABILITY COVERAGE FORM | N |
| CG 02 20 11 06 | FLORIDA CHANGES-CANCELLATION/NONRENEWAL | N |
| CG 21 47 07 98 | EMPLOYMENT RELATED PRACTICES EXCL. | N |
| M 10 74 01 93 | CGL QUICK REFERENCE | N |
| IL 00 17 11 98 | COMMON POLICY CONDITIONS | N |
| CG 71 03 01 06 | TOTAL POLLUTION EXCLUSION | N |
| CG 04 37 12 04 | ELECTRONIC DATA LIABILITY | O |
| CG 00 67 03 05 | EXCL-VIOLAION OF STATUES EMAIL/FAX/PHONE | N |
| CG 71 34 04 05 | BODILY INJURY DEFINITION MOD | N |
| CG 20 10 07 04 | ADD'L INS-OWNERS/LESSEES/CONT (B) | O |

21 N
2 T
2 B
25

NOTED

MAR 2 6 2007

N. Puskas

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Amerisure Mutual Insurance Company

**(b)** County of Residence of First Listed Plaintiff  Oakland, Michigan
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Atkinson & Brownell
One Biscayne Tower, Suite 3750
2 S. Biscayne Blvd.
Miami, FL 33157

## DEFENDANTS
Deanne West, individually and as PR of the Estate of Aaron West and as parent of Aaron West, Jr. and Aquinas West, et al.

County of Residence of First Listed Defendant  Broward County, Florida
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

*0:09CV 61935-Zloch RSR*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO
JUDGE                            DOCKET NUMBER

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 USCS 1332
LENGTH OF TRIAL via 2 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 12/7/09

FOR OFFICE USE ONLY
AMOUNT 350    RECEIPT # 548270 FP